CC-95-115                                                          1

En el Tribunal Supremo de Puerto Rico

| Unión Independiente de Empleados de la Autoridad de Edificios Públicos Recurridos  Vs.  Autoridad de Edificios Públicos Peticionario | Certiorari  98TSPR117 |
|---|---|

Número del Caso: CC-95-115

Abogados Parte Peticionaria:   Lcdo. George E. Green
                               Lcda. Yolanda Toyos Olascoaga

Abogado Parte Recurrida:       Lcdo. Jaime E. Cruz Alvarez

Tribunal de Instancia: Superior de Mayaguez

Juez del Tribunal de Primera Instancia: Hon. Juan Camacho Fabre

Tribunal de circuito de Apelaciones: Circuito Regional IV Aguadilla-Mayaguez

Juez Ponente:          Brau Ramírez
Panel Integrado por:   Colón Birriel
                       Rodríguez Maldonado
Fecha: 8/13/1998

Materia: Despido

     Este documento constituye un documento oficial del Tribunal
     Supremo que está sujeto a los cambios y correciones del
     proceso de compilación y publicación oficial de las
     decisiones del Tribunal. Su distribución electrónica se hace
     como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Unión Independiente de
Empleados de la Autoridad
de Edificios Públicos

   Recurrida

   v.                            CC-95-115      Certiorari

Autoridad de Edificios
Públicos

   Peticionaria

Opinión del Tribunal emitida por el Juez Asociado Señor Hernández
Denton

San Juan, Puerto Rico a 13 de agosto de 1998

Hoy nos toca considerar nuevamente el alcance del derecho constitucional de los empleados públicos a ser notificados de la celebración de una vista informal previa a su despido, como corolario del derecho constitucional a un debido proceso de ley. Por entender que en el presente caso se le privó al Sr. Carlos Vélez Ramírez de su propiedad sin el debido proceso de ley, pues fue despedido de su empleo en la Autoridad de Edificios Públicos sin concederle dicha salvaguarda constitucional, modificamos la sentencia dictada por el Tribunal de Circuito de Apelaciones.

I.

Carlos M. Vélez Ramírez se desempeñaba en una plaza regular de carácter permanente como trabajador de Conservación I en la Autoridad de Edificios Públicos (en adelante Autoridad) en el Centro de Gobierno de San Germán. El 26 de abril de 1990, Vélez Ramírez se vio involucrado en un incidente con su supervisor, José Vargas Castro, en el cual se dirigió hacia éste de forma irrespetuosa y desafiante. Como consecuencia de este incidente, el 3 de julio de 1990, la Autoridad le envió una carta a Vélez Ramírez notificándole que sería suspendido de empleo y sueldo por un periodo de cinco (5) días laborables.[1] La carta le apercibía al empleado que "de incurrir en el futuro en una de estas faltas, u otra similar, nos veremos obligados a despedirlo. Le exhortamos, por lo tanto, [a] que modifique su conducta para que no tengamos que llegar a ese extremo".

El 5 de julio de 1990 y el 16 de julio de 1990, Vélez Ramírez se dirigió nuevamente de forma amenazante e irrespetuosa hacia uno de sus supervisores. Por tal razón, el 13 de agosto de 1990 la Autoridad le solicitó al Sr. Ortiz García, técnico de personal de la Oficina de Recursos Humanos de la Autoridad, que llevara a cabo una investigación sobre estos incidentes. Durante esta investigación, Ortiz García sostuvo una conversación con Vélez Ramírez. Allí hizo unas expresiones de la misma naturaleza de las que dieron base a la investigación.

A pesar de estas expresiones, en su informe de investigación, emitido el 21 de agosto de 1990, Ortiz García no recomendó la destitución de Vélez. No obstante, casi tres (3) semanas después de sometido el informe, la Autoridad procedió a despedir a Vélez Ramírez por los incidentes del 5 y 16 de julio de 1990 y por las expresiones que éste hiciera el día de la investigación ante el señor Ortiz.

Posteriormente, la Unión Independiente de la Autoridad de Edificios Públicos (en adelante "la Unión") impugnó el despido y ambas

---

[1]Las partes no han cuestionado la validez y corrección del procedimiento administrativo que desembocó en dicha suspensión.

partes convinieron someter el caso a arbitraje ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo, conforme lo disponía el convenio colectivo vigente. La vista de arbitraje se celebró el 4 de noviembre de 1993. El árbitro emitió el laudo el 10 de febrero de 1995, en el cual concluyó que se trataba de un despido justificado. Sin embargo, determinó que por no concederle al empleado una vista informal previa al despido, ni notificarle de los procedimientos en su contra, se había violado el debido proceso de ley. Por tal razón, ordenó a la Autoridad a pagar a Vélez Ramírez el salario dejado de devengar desde la fecha de su despido hasta la fecha de la emisión del laudo.

La Autoridad, inconforme con esta determinación, acudió en revisión al Tribunal de Primera Instancia, el cual modificó el laudo del Negociado de Conciliación y Arbitraje. Determinó el tribunal a quo que el despido había sido justificado. Concluyó, además, que la carta enviada a Vélez Ramírez el 3 de julio de 1990 le había informado adecuadamente sobre las faltas que podían conllevar su destitución y que la conversación que sostuvo el Sr. Ortiz García con Vélez Ramírez había constituido la vista informal que se requiere previo al despido. Además señaló, en la alternativa, que la actitud amenazante reiterada por Vélez Ramírez constituía una situación de emergencia que dispensaba el cumplimiento de los requisitos de notificación y celebración de una vista informal previa al despido.

Inconforme con el dictamen, la Unión acudió ante el Tribunal de Circuito de Apelaciones, el cual revocó la sentencia dictada por el foro de instancia y reinstaló el laudo en todos sus extremos. Determinó el Tribunal que se privó a Vélez Ramírez de su propiedad sin seguirse el debido proceso de ley, pues no se le notificó al empleado de los cargos en su contra ni se celebró una vista previa a su despido. La Autoridad recurre ante nos y solicita que dejemos sin efecto la sentencia dictada por el Tribunal de Circuito de Apelaciones.

II.

A.

La Constitución de Puerto Rico dispone en su Artículo II, Sección 7, que "ninguna persona será privada de su propiedad o libertad sin un debido proceso de ley". Esta disposición tiene sus homólogas en las Enmiendas V y XIV de la Constitución de Estados Unidos. La garantía del debido proceso de ley opera en dos dimensiones distintas: la procesal y la sustantiva. La vertiente sustantiva del debido proceso de ley persigue proteger y salvaguardar los derechos fundamentales de la persona. La vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. Rodríguez Rodríguez v. E.L.A., Opinión y Sentencia del 4 de junio de 1992, 130 D.P.R.__ (1992).

Para que se active la protección que ofrece este derecho en su vertiente procesal, tiene que existir un interés individual de libertad o propiedad. Rivera Santiago v. Secretario de Hacienda, 119 D.P.R. 265 (1987); Board of Regents v. Roth, 408 U.S. 565 (1972). Una vez cumplida esta exigencia es preciso determinar cuál es el procedimiento exigido ("what process is due"). Rivera Santiago v. Secretario de Hacienda, supra; Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1984). Si bien la característica medular es que el procedimiento debe ser uno justo, a través de la jurisprudencia normativa se han identificado componentes básicos del debido proceso de ley, tales como una notificación adecuada y la oportunidad de ser escuchado y de defenderse.

Los factores que deben analizarse para determinar si un procedimiento cumple con los requisitos constitucionales del debido proceso de ley son: (1) el interés privado que puede resultar afectado por la actuación oficial; (2) el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas; y (3) el interés gubernamental protegido en la acción sumaria, inclusive la función de que se trata y los cargos

fiscales y administrativos que conllevaría el imponer otras garantías procesales. Mathews v. Eldrige, 424 U.S. 319 (1976); adoptado por este Tribunal en Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982).

B.

El debido proceso de ley, en su modalidad procesal, exige que el Estado lleve a cabo un procedimiento justo y equitativo al momento del Estado intervenir con el interés propietario de una persona, como lo es la retención de un empleo protegido por ley o cuando exista una expectativa de continuidad en el mismo. Board of Regents v. Roth, supra; Orta y otros v. Ayala y otros, Opinión y Sentencia de 30 de junio de 1992, 131 D.P.R.__ (1992).

Como corolario del derecho constitucional a un debido proceso de ley, el Tribunal Supremo de Estados Unidos en Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), reconoció el derecho de aquellos empleados públicos poseedores de un interés propietario en sus puestos a ser notificados de los cargos en su contra y a la celebración de una vista informal previa a su despido. Dicha norma ya había sido adelantada por el Tribunal Supremo Federal en Mathews v. Eldridge, supra, y por este Tribunal en Vélez Ramírez v. Romero Barceló, supra. En Loudermill se estableció la naturaleza de la notificación y de la vista informal. Veamos.

Respecto a la notificación de la vista, en Loudermill se indicó que el empleado tiene derecho a que se le notifique, oralmente o por escrito de los cargos en su contra. Cleveland Board of Education v. Loudermill, supra, a la pág. 545. En lo referente a la vista informal previa al despido, se señaló que su propósito consiste en evitar que la agencia administrativa tome una decisión errónea privando así a una persona de su sustento diario. Id., a la pág. 543. La vista no debe ser formal, extensa o elaborada. Id., a la pág. 545. Se le debe conceder al empleado la oportunidad de responder a los cargos en su contra y permitir que explique personalmente o por escrito las razones por las cuales, según él, no debe ser disciplinado. Id., a la pág.

546. La vista debe servir como un escrutinio mínimo inicial para determinar si existe una justificación razonable para creer que los cargos contra el empleado son ciertos, y que el curso de acción específico a seguirse está justificado. Helton v. Clements, 832 F.2d. 332 (5th. Cir., 1987).

Por último, en Loudermill se estableció que no es necesaria la celebración de una vista previa al despido en todos los casos. En situaciones en las que el patrono percibe un peligro significativo si mantiene al empleado en su puesto, el curso a seguir es la suspensión del empleado con sueldo. Cleveland Board of Education v. Loudermill, supra, a la pág. 544-45.[2]

Esta Curia en Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990), acogió lo resuelto por el Tribunal Supremo de Estados Unidos en Loudermill. Posteriormente, en Marrero Caratini v. Rodríguez, Opinión y Sentencia del 18 de abril de 1995, __ D.P.R.__(1995), este Tribunal reiteró los componentes básicos de la vista informal previa al despido de un empleado público para satisfacer el debido proceso de ley, a saber: (1) una notificación de los cargos administrativos contra el empleado; (2) una descripción de la prueba con la que cuenta el patrono y (3) una oportunidad para que el empleado exprese su versión de lo sucedido.

Acerca de la naturaleza de la vista informal, también hemos señalado que la vista informal previa a la destitución de un empleado es el primer escalón procesal en el cual ambas partes expresan de manera informal los cargos y posibles defensas que podrían ser utilizadas posteriormente ante el foro apelativo correspondiente. Sostuvimos, además, que a menos que la ley orgánica o el reglamento de la agencia concernida conceda mayores garantías procesales, la vista informal no establecerá procedimientos de descubrimiento de prueba, ni vistas adversativas formales,

---

[2]Esta norma fue expuesta por este Tribunal en Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990) y reiterada en Díaz Martínez v. Policía de P.R., Opinión y Sentencia de 22 de julio de 1993, 134 D.P.R. __ (1993).

ni concederá al empleado el derecho a confrontar toda la prueba en su contra.  Id.

III.

Resulta pertinente aclarar antes de proceder a aplicar las normas expuestas anteriormente a la situación de hechos que tenemos ante nuestra consideración, que a pesar de que las sentencias dictadas por el Tribunal de Primera Instancia y por el Tribunal de Circuito de Apelaciones descansan en lo resuelto por esta Curia en Torres Solano v. P.R.T.C., supra, dicho caso es posterior al despido del empleado Vélez Ramírez.[3] No obstante, para esa fecha ya el Tribunal Supremo de Estados Unidos se había pronunciado en Cleveland Board of Education v. Loudermill, supra, caso que, como señalamos anteriormente, fue acogido por este Tribunal en Torres Solano.

De manera que, al momento del despido de Vélez Ramírez, el estado de derecho era claro en cuanto a la obligación de la autoridad gubernamental de conceder una vista informal previa al despido y en cuanto a la naturaleza de dicha vista, pues esto había sido establecido por el Tribunal Supremo Federal en Loudermill. Las decisiones del Tribunal Supremo de los Estados Unidos que establecen las garantías mínimas del debido proceso, aplican directa e inmediatamente al Estado Libre Asociado de Puerto Rico[4].

En múltiples ocasiones hemos reconocido que las protecciones que reconoce el Tribunal Supremo Federal referentes a las disposiciones constitucionales aplicables a Puerto Rico, constituyen el mínimo de protección que estamos llamados a reconocer bajo nuestra Carta de Derechos.  Pueblo v. Meléndez Rodríguez, Opinión y Sentencia del 13 de julio de 1994, 136 D.P.R. ___ (1994); Unión Nacional de Trabajadores de

---

[3]Vélez Ramírez fue despedido de su empleo el 12 de septiembre de 1990.  La Opinión de este Tribunal en Torres Solano v. P.R.T.C. fue emitida el 20 de noviembre de 1990.

la Salud v. Soler Zapata, Opinión y Sentencia del 16 de abril de 1993, 133 D.P.R. __ (1993); Rodríguez v. E.L.A., supra; Bayron Toro v. Serra, 119 D.P.R. 605 (1987); Pueblo v. Santos Vega, 115 D.P.R. 818 (1984). Una vez aclarado este extremo, es preciso analizar en el presente caso se cumplió con el requisito de adecuada notificación.

IV.

En primer lugar, resulta pertinente señalar que Vélez Ramírez tenía un interés propietario en continuar en su puesto por ser un empleado regular de carrera. Determinada la existencia de este derecho se activa la protección constitucional de la cláusula del debido proceso de ley de nuestra Constitución y de la federal y nos corresponde examinar si se ha seguido un procedimiento adecuado para privar a una persona de un interés propietario.

Respecto al requisito de notificación, del expediente del presente caso no se desprende la forma en que Vélez Ramírez fue notificado de la alegada "vista informal" que se celebró previo a su despido. En las alegaciones de la Autoridad en varias ocasiones se sugiere que constituyó notificación suficiente para le celebración de la "vista informal" la carta que se le envió a Vélez Ramírez en la que se le informó la suspensión de la que fue objeto el 26 de abril de 1990 y en la cual la Autoridad le señaló que de incurrir en una falta similar sería despedido. Diferimos.

En primer lugar, la carta que se le envió a Vélez Ramírez el 3 de julio de 1990 fue para comunicarle una suspensión motivada por el incidente del 26 de abril de 1990 en que estuvo involucrado y el cual no motivó su posterior despido. Además, se le remitió al empleado dicha carta antes de que el patrono decidiera llevar a cabo una investigación sobre su conducta impropia. Lo que motivó el despido de Vélez Ramírez no fue el incidente que dio base a la suspensión que se le notificó en la referida carta, sino por el contrario, fueron

---

[4]El Tribunal Supremo de Estados Unidos reconoció en Examining Board v. Flores de Otero, 426 U.S. 572 (1979), que las protecciones de la garantía federal del debido proceso de ley aplican a los residentes de Puerto Rico.

incidentes que ocurrieron con posterioridad a la susodicha carta, esto es, los incidentes acaecidos el 5 y el 16 de julio.[5] Por tal razón, no es posible que esta carta haya servido de notificación a una "vista" que hasta ese momento la Autoridad no había contemplado celebrar.

Aun si en el presente caso la carta que se le envió a Vélez Ramírez se hubiese referido a los incidentes que provocaron su posterior despido, la misma hubiese sido insuficiente para satisfacer el requisito de adecuada notificación, de acuerdo con el debido proceso de ley. Esta carta constituyó una mera notificación de la falta anterior y del tipo de conducta que estaba prohibida y que daría lugar al despido. Si bien es cierto que esta información es parte de la que se requiere que se brinde en la notificación, no es menos cierto que la carta que se le remitió a Vélez Ramírez *no le notificó de la celebración de la vista informal* pues no se le informó ni el lugar ni la fecha en que se iba a celebrar la vista, ni se señaló específicamente los cargos en su contra. Tampoco incluyó una descripción de la prueba con la que el patrono contaba ni se le ofreció a Vélez Ramírez un cuadro claro de la vista o de las consecuencias para él de lo que allí transcurriría, de suerte que el empleado estuviese en posición de defenderse de los cargos en su contra, de expresar su versión sobre los hechos y de exponer por qué razón no debía ser disciplinado.

Hay que tener en cuenta en este tipo de casos que la notificación tiene el propósito vital de informar al empleado que se va a celebrar una vista, de suerte que pueda prepararse adecuadamente para la misma. Por tanto, es de poca utilidad y no atiende el propósito de la notificación el que se le señale al empleado el tipo de conducta que está vedada y que dará lugar al despido, si no se le señala que va a celebrarse la vista. Por ende, en el caso de marras la Autoridad privó a Vélez Ramírez de su propiedad sin el debido proceso de ley al no notificarle adecuadamente de la celebración de la vista.

---

[5]Este hecho se desprende de la carta en la que se le notificó a Vélez el despido.

V.

Una vez determinamos que la notificación en el presente caso no fue adecuada, es innecesario pasar a examinar si la entrevista que sostuvo Vélez Ramírez con el Técnico de la Oficina de Recursos Humanos constituyó la vista informal que como imperativo del debido proceso de ley se requiere celebrar previo al despido de un empleado que tenga un interés propietario en su cargo.  Sin una notificación adecuada de los cargos en su contra, cualquier vista que se hubiese celebrado sería insuficiente para satisfacer la exigencia del debido proceso de ley. Collins v. Marina Martínez, 894 F 2d. 474 (1st Cir. 1990).

VI.

Al quedar establecido que la Autoridad despidió al demandante sin notificarle de la celebración de la vista informal, nos resta determinar si en el presente caso estaba presente una situación de emergencia que dispensara el cumplimiento de dicho requisito.[6]

Los comentarios de Vélez Ramírez que provocaron su despido, no constituyeron realmente una amenaza dirigida a una persona particular ni estuvieron acompañados de otra conducta o circunstancias que provocaran una probabilidad inminente de un acto de violencia por parte del empleado.  Más bien, como concluyera el árbitro, se trataba de actuaciones de insubordinación y resistencia a la autoridad de sus supervisores.  Aunque esto constituía justa causa para el despido del empleado, no se justificaba la omisión de la concesión de las garantías procesales requeridas por la Constitución.  Reconocemos que, en ocasiones, una mera manifestación amenazante, no acompañada de otras acciones o indicios de conducta violenta, podría dar lugar a un despido sumario, por constituir una situación de emergencia.  No obstante, en el presente caso no se estaba frente a una situación de emergencia. Veamos.

---

[6]Para la fecha del despido de Vélez Ramírez, ya el Tribunal Supremo Federal había establecido esta excepción.  Cleveland Board of Education v. Loudermill, supra, a la pág. 545.  Esta norma fue expuesta por este Tribunal en Torres Solano v. P.R.T.C., supra, y reiterada en Díaz Martínez v. Policía de P.R., supra.

La investigación en el presente caso se llevo a cabo el 13 de agosto de 1990, casi un mes después de la ocurrencia de los hechos que dieron base al despido de Vélez Ramírez. El técnico de la Oficina de Recursos Humanos de la Autoridad que tuvo a su cargo la investigación, Sr. Ortiz García, no rindió su informe hasta una semana después de concluida la investigación. Incluso en dicho informe, Ortiz García no entendió que los cargos revistieran tal gravedad que ameritaran la destitución de Vélez Ramírez, por tal razón no recomendó su despido.

Especial atención también merece el hecho de que Vélez Ramírez fue despedido aproximadamente un mes después del informe del Sr. Ortiz García. Es decir, desde la fecha del último de los incidentes que motivó el despido de Vélez hasta la fecha de su destitución transcurrió más de un mes. No podemos concluir que la conducta de Vélez constituyera una situación de emergencia cuando el propio patrono no consideró que lo fuera, esto en vista del término transcurrido entre las faltas y el despido, y del contenido del informe sometido por el investigador nombrado por el patrono.

Aunque el despido en el presente caso fue justificado, entendemos que se le privó al demandante de su propiedad sin el debido proceso de ley al despedirlo de su empleo sin notificarle de los procedimientos en su contra.

Por las razones que anteceden, modificamos la sentencia del Tribunal de Circuito de Apelaciones a los fines de dejar sin efecto la parte de la misma que reinstala el laudo en todos sus extremos. Entendemos que lo que procede en este caso es que la Autoridad le pague a Vélez Ramírez el salario dejado de devengar por éste desde la fecha del despido a la *fecha en la que se celebró una vista conforme lo requiere el debido proceso de ley,* es decir, cuando se celebró la vista de arbitraje.[7] Véase <u>Díaz Martínez v. Policía de Puerto Rico</u>, supra. Se devuelve el caso al Tribunal de Primera Instancia para que haga el cómputo correspondiente.

Federico Hernández Denton
Juez Asociado

---

[7]Esta vista de arbitraje se celebró el 4 de noviembre de 1993.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Unión Independiente de
Empleados de la Autoridad
de Edificios Públicos

   Recurrida

        v.                          CC-95-115        Certiorari

Autoridad de Edificios Públicos

   Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 13 de agosto de 1998.


     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se modifica la Sentencia emitida por el Tribunal de Circuito de Apelaciones en el caso de epígrafe en aquella parte que dispuso que el Sr. Carlos Vélez Ramírez tiene derecho al sueldo dejado de percibir desde el momento de su despido hasta la fecha de emisión del laudo de arbitraje.  Conforme a nuestros pronunciamientos, Vélez Ramírez tiene derecho al sueldo dejado de percibir desde el momento de su despido hasta la fecha de la celebración de la vista de arbitraje.  Así modificada, se confirma la sentencia recurrida.

     Se devuelve el caso de autos al Tribunal de Primera Instancia para la realización del cómputo correspondiente.

     Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Fuster Berlingeri concurrió sin Opinión escrita.  El Juez Asociado señor Negrón García disintió sin Opinión escrita.  El Juez Asociado señor Corrada del Río emitió Opinión Disidente.


                         Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Unión Independiente de
Empleados de la Autoridad
de Edificios Públicos

    Recurrida                                    CC-95-115    Certiorari

      vs.

Autoridad de Edificios
Públicos

    Peticionaria


Opinión Disidente emitida por el Juez Asociado SEÑOR CORRADA DEL RIO



San Juan, Puerto Rico, a 13 de agosto de 1998

En el presente caso la parte peticionaria, Autoridad de Edificios Públicos, acude ante nos mediante recurso de certiorari solicitando que revisemos la sentencia emitida por el Tribunal de Circuito de Apelaciones el 31 de agosto de 1995, notificada el 12 de septiembre de 1995. Mediante dicha sentencia se revocó una sentencia del Tribunal de Primera Instancia y se reinstaló un laudo de arbitraje emitido el 10 de febrero de 1995. En dicho laudo se determinó que el despido del Sr. Carlos M. Vélez Ramírez por la Autoridad de Edificios Públicos había estado justificado, pero se le había violentado el debido proceso de leyal no habérsele notificado los cargos en su contra ni habérsele celebrado vista previa al despido.

Por entender que medió la notificación y la vista previa al despido requeridas por el debido proceso de ley, disentimos.

I


El Sr. Carlos M. Vélez Ramírez se desempeñaba en una plaza de carácter permanente como Trabajador de Conservación I de la Autoridad de Edificios Públicos (en adelante Autoridad) en el Centro de Gobierno

de San Germán y era miembro de la Unión de Empleados de la Autoridad de Edificios Públicos (en adelante Unión).

El 26 de abril de 1990, el Sr. Vélez Ramírez se vio envuelto en un incidente con su supervisor, el Sr. Vargas Castro, durante el cual éste le llamó la atención por desayunar en horas laborables. El Sr. Vélez Ramírez le contestó al supervisor de forma irrespetuosa y desafiante, lo que causó su suspensión de empleo y sueldo por cinco días laborables, específicamente del 7 al 13 de julio de 1990.[8] En la carta mediante la cual se le notificó de su suspensión, se le apercibió que "...de incurrir en el futuro en una de estas faltas, u otra similar, nos veremos obligados a despedirlo. Le exhortamos, por lo tanto, a que modifique su conducta para que no tengamos que llegar a tal extremo."[9]

---

[8] Dicha suspensión fue confirmada mediante laudo emitido el 22 de diciembre de 1992 en el caso A-2918.  Exhibit VII, Apéndice,  pág. 180.
[9] Carta de 3 de julio de 1990. Apéndice, Exhibit V, pág. 108.

Estimado señor Vélez Ramírez:

Luego de realizada una investigación por nuestra Oficina de Recursos Humanos y Relaciones Laborales, hemos encontrado lo siguiente:

a- El 26 de abril de 1990, el Supervisor, Sr. José Vargas Castro, le llamó la atención por usted estar desayunando luego de comenzada su jornada regular de trabajo.  En reacción al señalamiento del supervisor usted se alteró, le faltó el respeto y le habló de forma amenazante.

b- El 4 de mayo de 1990, una vez se presentaran al Centro de Gobierno de San Germán, el Ing. Michael Figueroa y Efrén Molina con el propósito de recoger su versión sobre lo ocurrido el 26 de abril de 1990, usted se alteró violentamente e hizo comentarios ofensivos hacia los supervisores.  Luego, amenazó con irse a los puños con el Sr. Vargas si este decía lo contrario de lo ocurrido el día 26 de abril.

c- El 10 de mayo de 1990 usted ofendió al Supervisor, señor José Vargas Castro.

Los incidentes antes mencionados demuestran un patrón de conducta que tiende a desafiar, amenazar, degradar e intimidar a la supervisión.

Este comportamiento no lo podemos permitir ya que además de que deteriora las relaciones humanas en el lugar de trabajo, socava la autoridad del supervisor.

El 5 de julio de 1990, previo al comienzo de la sanción impuesta, el Sr. Vélez Ramírez se dirigió al supervisor de la Autoridad, Sr. Rosa Núñez, le preguntó las razones por las cuales los otros supervisores no pasaban por su área, y le dijo que "...mejor es que no vengan mucho porque uno de ellos puede perder la vida fácilmente."[10]

El 16 de julio de 1990, al regresar el Sr. Vélez Ramírez al trabajo luego de la suspensión, el Sr. Rosa Núñez le entregó un documento relacionado con horas extras trabajadas.  Al recibirlo, el empleado preguntó si el documento era otra suspensión y expresó que la suspensión anterior no le quitaba ni una hora de sueño y que conseguiría un abogado para así vengarse.  Añadió que "... Si no gano el caso como quiera gano porque entonces sí me voy a los puños con uno de los tres [supervisores], y que se cuiden cuando vengan por ahí, porque parece que Granell le ha metido en la cabeza a los supervisores que yo soy un hijo de puta, pero lo que te aconsejo a ti como supervisor nuevo es que no te dejes llevar de esos comentarios y veas como yo trabajo y podrás ver la realidad. Parece que a esos embusteros

---

Tomando en cuenta la seriedad de las faltas cometidas, hemos determinado suspenderlo de empleo y sueldo por un período de cinco (5) días laborables, comenzando el 7 de julio y terminando el 13 de julio de 1990.

continúa...

2...continuación

Se le advierte que de incurrir en el futuro en una de  estas faltas, u otra similar, nos veremos obligados a despedirlo.  Le exhortamos, por lo tanto, a que modifique su conducta para que no tengamos que llegar a ese extremo.

Atentamente,

(firmado)
Luis Rafael Arias
Director Ejecutivo

[10]Laudo de Arbitraje, Caso Núm. A-3834-93, a la pág. 14.

sus madres le lavaban la cara con meao y no con agua, pero que se cuiden que me las voy a cobrar."[11]

El Sr. Rosa Núñez reportó ambos incidentes y el Sr. Cecilio Ortíz García, técnico de personal de la Autoridad, recibió la encomienda de realizar una investigación de los mismos. El 13 de agosto de 1990 el Sr. Ortíz García se reunió con el Sr. Vélez Ramírez en compañía de un delegado de la Unión. Desconocemos el modo en que el Sr. Vélez Ramírez fue notificado sobre dicha reunión, pues no surge de los autos. Sí podemos inferir, dado el hecho de que éste asistió a la reunión y lo hizo acompañado de un representante de la Unión, que se le informó de la celebración de la vista y, al menos de forma general, de su naturaleza y propósitos, al igual que de los cargos. Al preguntarle sobre su posición en cuanto a los cargos en su contra, el Sr. Vélez Ramírez negó los incidentes y señaló que "Ya esto es una persecución lo que tienen conmigo. Cosas como éstas son las que hacen que salgan en los periódicos noticias como: Empleado Mata Supervisor."[12]

En su informe de investigación sometido el 21 de agosto de 1990, el Sr. Ortíz García no recomendó la destitución del empleado toda vez que entendió que se trataba de comentarios hechos a segundas personas en momentos de tensión y porque

---

[11]Id.

[12]Laudo de Arbitraje, Caso Núm. A-3834-93, a la pág. 15.

desconocía que el empleado ya había incurrido en conducta similar anteriormente. El 12 de septiembre de 1990 la Autoridad destituyó de empleo y sueldo al Sr. Vélez Ramírez.

Inconforme con la decisión tomada por la Autoridad, la Unión impugnó el despido. Ambas partes convinieron someter a arbitraje, ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo, la controversia sobre si el despido del empleado había estado justificado, conforme lo contempla el convenio colectivo entre las partes.[13]

El árbitro emitió laudo el 10 de febrero de 1995 resolviendo que el despido había estado justificado por los incidentes antes mencionados, los cuales quedaron establecidos mediante la prueba. Sin embargo, determinó que la Autoridad había privado de su propiedad al obrero[14] sin seguir el debido procedimiento de ley al despedirlo sin concederle una vista previa y sin notificarle previamente de los cargos imputados, conforme a lo resuelto en *Torres Solano v. P.R.T.C.*, 127 D.P.R. 499 (1990).[15] Asimismo, concluyó el árbitro que no se había demostrado que para la

---

[13]Según consignó el árbitro en su laudo, para la fecha de los hechos el convenio colectivo había vencido. Posteriormente las partes acordaron extender retroactivamente la vigencia del convenio a querellas surgidas durante dicho período. El convenio requería que el laudo fuese emitido conforme a derecho.

[14]Quien ocupaba una plaza permanente y tenía interés propietario en la posición.

[15]En *Torres Solano*, supra, acogimos la norma enunciada por el Tribunal Supremo de los Estados Unidos en *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), a los efectos de que todo empleado público que posee un interés propietario en su puesto tiene derecho, en virtud del Artículo V y la Enmienda XIV de la Constitución de Estados

continúa...

[8]...continuación

Unidos, a una vista informal previa al despido. Aunque, como bien señala la Opinión Mayoritaria, dicho caso fue resuelto con posterioridad a la ocurrencia de los hechos del presente, también fue resuelto con anterioridad a que emitiéramos el presente dictamen y lo resuelto allí es una interpretación de disposiciones constitucionales que sí estaban vigentes al ocurrir los hechos, por lo que lo allí resuelto es pertinente de aplicación al caso de autos. Véase **Pueblo v.**

fecha del despido estuviesen presentes las circunstancias de emergencia mencionadas en *Torres Solano*, <u>supra</u>, que justificasen la destitución sumaria del empleado sin celebrar una vista previa.   Ordenó a la Autoridad pagarle al empleado los salarios dejados de percibir desde la fecha del despido, 12 de septiembre de 1990, hasta el 10 de febrero de 1995, fecha de la emisión del laudo.

Mediante recurso de revisión, la Autoridad acudió ante el Tribunal de Primera Instancia, el cual dictó sentencia modificando el laudo recurrido el 17 de mayo de 1995. Eliminó la concesión de salarios desde la fecha de la destitución hasta la emisión del laudo.  Determinó que la carta cursada al empleado el 3 de julio de 1990 le había informado adecuadamente sobre los aspectos de su conducta que conllevarían su destitución y que la investigación llevada a cabo por el técnico de personal de la Autoridad le había concedido al empleado la oportunidad de expresarse personalmente y explicar las razones de su conducta. Concluyó el Tribunal de Primera Instancia que tal proceder cumplió con

---

**Delgado Rodríguez**, 108 D.P.R. 196 (1978) y **Rivera Escuté v. Delgado**, 92 D.P.R. 765 (1965).

las garantías mínimas que exige el debido proceso de ley en cuanto a la vista informal previa al despido de un empleado público y al requisito de notificación de los procedimientos seguidos en su contra. Señaló que, en la alternativa, la reiterada actitud amenazante del empleado configuraba una circunstancia de emergencia que justificaba la destitución sumaria de empleo y sueldo del Sr. Vélez Ramírez.

Inconforme con el dictamen, la Unión acudió ante el Tribunal de Circuito de Apelaciones mediante recurso de certiorari. Previo trámite de mostración de causa, dicho foro dictó sentencia revocando la sentencia recurrida y reinstalando el laudo en todos sus extremos. Determinó el tribunal apelativo que el foro recurrido se extralimitó en su función revisora al descartar las determinaciones del árbitro sustentadas por la prueba.

De dicha sentencia acude ante nos la peticionaria, Autoridad de Edificios Públicos, formulando los siguientes señalamientos de error:

> *Erró el Tribunal de Circuito de Apelaciones al determinar que no se le había brindado derecho a ser oído al empleado despedido.*

> *Erró el Tribunal de Circuito de Apelaciones al reinstalar el remedio dictado por el árbitro.*

Aduce la peticionaria que incidió el Tribunal de Circuito de Apelaciones al determinar que se privó al empleado de su propiedad sin seguirse el debido proceso de ley al no notificarle los cargos imputados en su contra y al no brindarle la oportunidad de ser oido en vista informal previa al despido y, bajo tal fundamento, reinstalar el laudo en todos sus extremos. Sostiene que en el procedimiento seguido en contra del empleado se cumplió con el requisito de notificación de los cargos y el de vista informal. En la alternativa aduce que la Unión renunció al derecho que tiene el empleado a tales garantías toda vez que el convenio colectivo otorgado entre las partes no contiene disposición alguna sobre la concesión de vista previa al despido.

II

Las normas pautadas por este foro en torno a la revisión judicial de laudos de arbitraje se ha caracterizado por una marcada deferencia

hacia éstos.   Un laudo basado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si éstas, como ocurre en el caso de autos, convienen que la controversia sometida al árbitro sea resuelta conforme a derecho. No obstante, aún en estos casos,  los tribunales no deben inclinarse a decretar la nulidad del laudo a menos que efectivamente el mismo no haya resuelto la controversia con arreglo a derecho. Véase *Universidad Católica de P.R. v. Triangle Engineering Corp.*, Op. de 18 de mayo de 1994, 94 J.T.S. 72; *Febus v. Marpe*, Op. de 25 de febrero de 1994, 94 J.T.S. 19; *J.B.T. v. Corp. de Crédito*, 124 D.P.R. 846 (1989); *Rivera v. Samaritano & Co., Inc.*, 108 D.P.R. 604 (1979).

Hemos resuelto que los laudos de arbitraje son revisables ante los tribunales de manera análoga al procedimiento dispuesto para la revisión de agencias administrativas, las cuales gozan de gran deferencia por parte de los tribunales. *Corp. de Crédito y Desarrollo Comercial y Agrícola v. Unión General de Trabajadores*, Op. de 10 de mayo de 1995, 95 J.T.S. 62; *U.I.L. de Ponce v. Destilería Serrallés*, 116 D.P.R. 348 (1985).   De acuerdo a este esquema, la función del tribunal no es la de emitir un juicio de novo sobre los méritos de la controversia, sino la de pasar juicio sobre la corrección de lo decidido por el árbitro, confiriendo al laudo una presunción de corrección similar a la que se le atribuye a cualquier sentencia o resolución administrativa.

Partiendo de estos principios es que hemos de analizar la presente controversia. Las cuestiones referentes a si la carta cursada el 3 de julio de 1990 y la reunión celebrada entre el investigador y el empleado cumplieron con los requisitos constitucionales de notificación de los cargos y de vista previa al despido, respectivamente, son asuntos revisables por este Foro.

III

Consideramos inmeritorio el planteamiento de la peticionaria de que la Unión renunció al derecho del empleado a las garantías mínimas del

debido proceso de ley por razón de que el convenio no contiene disposición alguna sobre la concesión de vista previa al despido. A pesar de que, como veremos más adelante, a los empleados unionados de la Autoridad no les aplican las disposiciones de la Ley de Personal[16] ni las del Reglamento de Administración de Personal de la Autoridad, estas garantías provienen de la Constitución de los Estados Unidos y de la del Estado Libre Asociado de Puerto Rico. Tratándose de un derecho de génesis constitucional, se requiere que su renuncia sea expresa y no meramente inferible de la omisión de las partes. *Lizarribar v. Martínez Gelpí*, 121 D.P.R. 770 (1988); *Pagán Hernández v. U.P.R.,* 107 D.P.R. 720 (1978). Además, hemos dicho que el derecho a la vista previa al despido existe "*aún cuando el estatuto o contrato que le da derecho a permanencia en su puesto no provea para la celebración de una vista previa y sí para una vista formal con posterioridad al despido.*" Torres Solano, supra, pág. 523.

IV

Es principio fundamental que el debido proceso de ley no es un molde riguroso que se da en el abstracto, pues su naturaleza es eminentemente circunstancial y pragmática, no dogmática. Cada caso exige una evaluación concienzuda de las circunstancias envueltas. *Quiles Rodríguez v. Superintendente de la Policía*, Op. de 2 de noviembre de 1995, 95 J.T.S. 144; *Rivera Rodríguez & Co. v. Lee Stowell Taylor*, Op. de 30 de junio de 1993, 93 J.T.S. 111; *Facultad de Ciencias Sociales v. C.E.S.*, Op. de 2 de junio de 1993, 93 J.T.S. 88; *Universidad del Turabo v. Liga Atlética Interuniversitaria*, 126 D.P.R. 497 (1990); *Román Vargas v. Tribunal Examinador,*

---

[16]Ley Núm. 5 del 14 de octubre de 1975, 3 L.P.R.A. sec. 1301 et seq.

116 D.P.R. 71 (1985); Alicea Alvarez v. Valle Bello, 111 D.P.R. 847 (1982); *Pueblo v. Andréu González*, 105 D.P.R. 315 (1976); *Domínguez Talavera v. Tribunal Superior*, 102 D.P.R. 423 (1974).  El Tribunal Supremo de los Estados Unidos, en *Connecticut v. Doehr*, 115 L.Ed.2d. 1 (1991) reafirmó esta concepción al señalar que:

> "These cases underscore the truism that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."

Como consecuencia de esta naturaleza se han establecido los factores a analizar para determinar si un procedimiento cumple con los requisitos constitucionales del debido proceso, a saber: (a) el interés privado que pueda resultar afectado por la actuación oficial; (b) el riesgo de una privación errónea debido al procedimiento utilizado; y (c) el interés del Estado, incluyendo su función envuelta y las cargas administrativas y fiscales que conllevaría requerir garantías adicionales o sustitutas. *Román Vargas v. Tribunal Examinador*, supra; *Mathews v. Elridge*, 424 U.S. 319 (1976).

En *Cleveland Board of Education v. Loudermill*, supra, el Tribunal Supremo de los Estados Unidos reiteró la norma que reconoce el derecho a una vista informal previa al despido para aquellos empleados públicos que poseen un interés propietario en sus puestos. Dicha norma ya había sido adelantada en *Mathews v. Eldridge,* supra, y por este Tribunal en *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982). Posteriormente confirmamos dicha norma en *Torres Solano v. Puerto Rico Telephone Company*, supra. Allí dijimos que debe notificarse a la parte contra quien se va a tomar tal medida disciplinaria del curso de acción específico a seguirse en su contra y que debe concedérsele una oportunidad de responder a los cargos. La vista no debe ser compleja, complicada, extensa o formal. Basta con que se le permita al empleado explicar personalmente o por escrito las razones por las cuales, según él, no debe ser disciplinado.

El propósito de la vista consiste en evitar que la agencia administrativa tome una decisión errónea, privando así a una persona de

su sustento diario. *Torres Solano v. P.R.T.C.*, supra; *Vélez Ramírez v. Romero Barceló*, supra; *Cleveland Board of Education v. Loudermill*, supra. Debe servir como un escrutinio mínimo inicial para determinar si existe justificación razonable para creer que los cargos contra el empleado son ciertos, y que el curso de acción específico a seguirse está justificado. *Torres Solano v. P.R.T.C.*, supra; *Helton v. Clements*, 832 F2d 332 (5th Cir.1987). Al amparo de las doctrinas establecidas en *Cleveland Bd. of Educ. v. Loudermill*, supra, y en *Vélez Ramírez v. Romero Barceló*, supra, y considerando la naturaleza de los intereses particulares afectados, el riesgo de una decisión errónea y el interés gubernamental protegido, decidimos en *Torres Solano,* supra, que de ordinario la celebración de una vista informal antes de la destitución promovía los mejores intereses de la administración pública.

En adición a los derechos provistos por la Constitución de los Estados Unidos y de Puerto Rico, el empleado público tiene derecho a que se le notifiquen, por escrito, los cargos en su contra. 3 L.P.R.A. sec. 1336 (4). *Torres Solano v. Puerto Rico Telephone Company*, supra. Sin embargo, este requisito es de naturaleza estatutaria y no constitucional. Como dijéramos en *Torres Solano*, supra,[17] "[...] Si bien *Loudermill*, supra, dejó abierta la posibilidad de que la autoridad nominadora le notificara los cargos al empleado público verbalmente, nuestra Ley de Personal le concede mayores garantías que ese mínimo constitucional al exigirle a ésta que tal notificación sea por escrito." Ahora bien, la misma ley exime de su aplicación en cuanto a los empleados de agencias o instrumentalidades del Gobierno que tengan derecho a negociar colectivamente mediante leyes especiales.[18] Siendo esta la situación de la Autoridad de Edificios Públicos, forzoso es concluir que el requisito estatutario no es de aplicación al caso de autos. Aunque se requiere la previa notificación de los cargos, la misma no tiene que ser necesariamente por escrito cuando ya

---

[17]Al escolio número 10.

previamente la Autoridad había advertido por escrito al empleado que de incurrir nuevamente en faltas similares se vería precisada a despedirlo. Surgida la repetida conducta amenazante del empleado hacia sus superiores, el técnico de personal de la Autoridad se reunió con éste y con un delegado de la Unión para escucharle y luego rindió sus recomendaciones a la Autoridad, que procedió a despedirlo.

El propósito de la notificación es poner al empleado público al tanto de los cargos en su contra y de la consecuencia que podrían acarrear los mismos. Así el empleado estará en posición de expresar su versión de los hechos y las razones por las cuales no debe ser disciplinado.

Al analizar el problema ante nos a base del derecho anteriormente enunciado, y considerando la totalidad de las circunstancias específicas de este caso, concluimos que la Autoridad cumplió con su deber de notificar los cargos al empleado según requerido por el debido proceso de ley. La carta del 3 de julio de 1990 le notificó de la sanción impuesta por la falta anterior, le advirtió que ese tipo de conducta estaba prohibida y que, de ser repetida, daría lugar a su despido. Al citársele verbalmente a la posterior reunión acompañado de un representante de la Unión, el Sr. Vélez Ramírez estaba consciente de los motivos por los cuales estaba siendo citado. Conocía de su conducta y había sido apercibido de sus consecuencias por escrito. Tan es así, que fue acompañado de un representante de la Unión.

Del mismo modo la referida entrevista constituyó la vista informal previa al despido requerida por la Constitución. Al empleado se le ofreció un cuadro claro sobre el contexto de la misma y de sus consecuencias. Se le dio oportunidad de expresar su posición y de exponer su versión de los hechos, todo ésto en presencia de un representante de la Unión. Si bien es cierto que se utilizaron algunas expresiones allí vertidas por él como uno de los cargos para su

---

[18] 3 L.P.R.A. 1338 (4).

destitución[19], lo cual corroboraba su conducta desafiante, ello no es motivo para determinar que la reunión celebrada no fue la vista previa requerida.   Debemos enfatizar que la justa causa para el despido lo fue el ambiente de hostilidad creado por el Sr. Vélez Ramírez con sus constantes amenazas  y retos a sus  supervisores.   Siendo esto así, sus expresiones en la reunión no hicieron más que reforzar el caso del patrono y confirmar los cargos en su contra.

En *Díaz Martínez v. Policía de Puerto Rico*, Op. de 22 de julio de 1993, 93 J.T.S. 122, nos enfrentamos a una situación similar a la del caso de autos.   Allí decidimos[20] que la reunión investigativa celebrada no cumplió con el requisito de vista previa. Los fundamentos esbozados fueron que del acta de lo ocurrido el día de la entrevista se desprendía que la toma de la declaración jurada era únicamente de naturaleza investigativa;  que el procedimiento se limitó a informar al  empleado  que  se le iba a tomar una declaración jurada sobre los  incidentes;  y  que  la  investigación  se  llevaba  a  cabo  para determinar si se formularían cargos.   Las circunstancias específicas del caso de autos varía en tanto y en cuanto el Sr. Vélez  Ramírez tuvo advertencia previa por escrito que de

---

[19]Al expresar en la vista que "...cosas como éstas son las que hacen que salgan en los periódicos noticias como: Empleado Mata Supervisor."

[20]Con Opinión disidente del Juez Asociado señor Negrón García, a la cual se unió el Juez Asociado señor Rebollo López, y Opinión Disidente del Juez Asociado señor Fuster Berligeri.

reincidir en la conducta que dio motivo a una suspensión temporera, habría de ser destituido, por lo que sabía cuando fue a la reunión con el investigador que lo escuchó el riesgo del despido a que estaba expuesto y la conducta por la cual estaba siendo investigado.

Por los fundamentos anteriormente expuestos, disentimos. Revocaríamos la sentencia dictada por el Tribunal de Circuito de Apelaciones y resolveríamos que el despido del Sr. Vélez Ramírez estuvo justificado y que en el mismo se siguió el debido proceso de ley, por lo que procede anular el laudo de arbitraje en tanto y en cuanto ordenó a la Autoridad pagarle a éste los salarios dejados de percibir entre la fecha del despido, el 12 de septiembre de 1990, hasta el 10 de febrero de 1995, fecha en que se emitió el laudo.


                         BALTASAR CORRADA DEL RIO
                              Juez Asociado