*1086 TEXTO COMPLETO DE LA SENTENCIA
All Imaging Diagnostic Center, Inc. (en adelante, “All Imaging” o “la parte Recurrente”), nos solicita que dejemos sin efecto la Resolución emitida por el Departamento de Salud de Puerto Rico (en adelante, “Departamento de Salud'), el 15 de'febrero de 2006 y notificada el 16 de febrero del mismo año. Mediante esta Resolución, el Departamento de Salud desestimó la Querella número Q-04-11-149 sobre Violación a la Ley de Certificados de Necesidad y Conveniencia presentada por la parte Recurrente, el 4 de noviembre de 2004. Los querellados son los doctores Francisco Loubriel Méndez y Roberto González Sala h/n/c Quadrangle Imaging Center & MRI (en adelante, “Quadrangle” o “la parte Recurrida”).
De la referida Resolución se desprende que:
“El foro [administrativo] luego de evaluar detenidamente el expediente y los memorandos presentados por las partes, concluye que procede la desestimación por dos razones: en primer lugar, por el craso incumplimiento con los requisitos estatutarios que redundó en una violación al debido proceso de ley de la parte querellada, y en segundo lugar, por falta de prueba admisible que sostenga las alegaciones de la querella. Artículo VIH, Inciso-(5), Reglamento Núm. 85.” Informe de la Oficial Examinadora del 15 de febrero de 2006, acogido por la Secretaria de Salud, la doctora Rosa Pérez Perdomo.
Examinado el expediente, con el beneficio de la comparecencia de todas las partes y el derecho aplicable, CONFIRMAMOS la Resolución recurrida. Veamos los hechos pertinentes a la controversia de autos. •
I
El 4 de noviembre de 2004, All Imaging sometió una querella ante la Secretaría Auxiliar para la Reglamentación y Acreditación de Facilidades de Salud (SARAFS) contra Quadrangle Imaging Center. En su reclamación alegó que Quadrangle Imaging Center adquirió un equipo de resonancia magnética, comúnmente conocido como MRI por sus siglas en inglés, sin obtener la correspondiente autorización. Ello, en contravención a las disposiciones del Artículo 333a(9) de la Ley Núm. 2 del 7 de noviembre de 1975, según enmendada, 24 LPRA §334a (en adelante, “Ley CNC’), o, en su defecto, la petición de exención requerida por el Artículo IV(j) del Reglamento Aúm. 112 del Secretario de Salud para Regir el Proceso de Evaluación de Solicitudes para el Otorgamiento de Certificados de Necesidad y Conveniencia de 20 de febrero de 2004.
Quadrangle presentó, el 28 de diciembre de 2004, su Contestación a la Querella. Simultáneamente sometió moción informativa sobre un primer pliego de interrogatorios cursado a All Imaging.
*1087 El 14 de enero de 2005, Quadrangle solicitó la desestimación de la querella, amparándose en el Artículo VII (B)(7) del Reglamento Núm. 85 del Departamento de Salud de 27 de agosto de 1996 (en adelante , “Reglamento Núm. 85 ). El 26 de enero de 2005, All Imaging le solicitó al Departamento de Salud que le relevara de contestar el interrogatorio que le fue cursado por Quadrangle y paralizara el descubrimiento de prueba, hasta tanto dicho foro resolviera la petición de desestimación del querellado.
El 28 de febrero de 2005, el Departamento de Salud celebró la primera vista sobre el estado de los procedimientos del caso. En la misma, Quadrangle hizo alusión al interrogatorio notificado y pendiente de contestar por All Imaging.
Luego de varios trámites procesales, el Departamento celebró otra vista el 9 de agosto de 2005. Constató en su Minuta que tenía ante sí considerar la petición de cese y desista de All Imaging y la moción de desestimación sumaria de Quadrangle, junto con la correspondiente oposición de la parte querellante. Asimismo, se desprende de la referida Minuta que All Imaging aún no había contestado el interrogatorio cursado el 28 de diciembre de 2004. Por último, expuso que las partes tendrán un término de diez (10) días para informarle a la agencia si habrán de renunciar a su derecho de celebrar vista en su fondo y acordar someter el caso para que se resuelva por medio del expediente. Ello, toda vez que Quadrangle planteó que la controversia es una de derecho sobre el reemplazo de un equipo para el cual, según alega All Imaging, no se cumplió con las disposiciones de la Ley de CNC, supra, ni las del Reglamento número 112, supra.
En cumplimiento con la referida Orden del 9 de agosto de 2005, las partes sometieron- sus respectivas posturas. El 11 de agosto de 2005, Quadrangle solicitó que la querella se adjudicara en virtud de los documentos que obran en el expediente, sin necesidad de celebrar vista. El 18 de agosto del mismo año, All Imaging se opuso y notificó que estaba impedida de solicitar vista porque se proponía presentar, en el transcurso de la semana siguiente, una Querella Enmendada y una Solicitud de Paralización. De este modo, mediante Orden emitida el 18 de agosto de 2005, el Departamento de Salud declaró “Ha Lugar” la petición de Quadrangle, esto es, notificó su decisión de proceder con la resolución de la querella a base del expediente.
El-26 de agosto de 2005, All Imaging solicitó al Departamento de Salud que emitier-a urgentemente una orden de cese y desista contra Quadrangle para el uso del MRI en cuestión y que se concediera vista administrativa. En esa misma fecha All Imaging sometió ante el Departamento de Salud una Querella Enmendada en la cual añadió alegaciones relacionadas a una segunda máquina de MRI que adquirió Quadrangle a un costo de $1,358;000.00, la cual había sido instalada y se propoma utilizar sin haber obtenido el correspondiente CNC. De igual forma, All Imaging alegó que Quadrangle le cursó al Departamento de Salud una carta solicitándole autorización para operar esta segunda máquina.
Quadrangle se opuso a que se permitieran las enmiendas a la querella. Fundamentó su oposición en el hecho de que la actuación de All Imaging es contraria a lo discutido y acordado en la última vista sobre estado de los rrocedimientos y con lo ordenado ese mismo día por el Oficial Examinador. Alegó, además, que esta querella representa un intento de All Imaging para reiniciar el proceso, luego de haber transcurrido los términos aplicables sajo la Orden Gubernativa Enmendada, en el Reglamento Núm. 85 del Departamento de Salud y en la Ley de Procedimiento Administrativo Uniforme. Por último, Quadrangle apercibió nuevamente al Departamento de Salud que All Imaging no le había contestado el pliego de interrogatorios cursado el 28 de diciembre de 2004.
Así las cosas, el 13 de junio de 2005, el Departamento de Salud emitió orden mediante la cual declaró “No Ha Lugar" tanto la solicitud de paralización del descubrimiento de prueba que había sometido All Imaging, así como la moción de desestimación de Quadrangle y señaló vista de status para el 23 de junio del mismo año.
El 26 de septiembre de 2005, el Departamento de Salud celebró una vista argumentativa en la cual hizo los siguientes señalamientos: 1) que la parte querellada aún no ha contestado el interrogatorio que le fue sometido el *1088 28 de diciembre de 2004, y luego de varias solicitudes de prórroga fue que procedió a contestar la solicitud de sentencia sumaria; 2) que la parte querellante, luego de varios meses sin realizar gestión alguna ante la agencia, presentó una querella enmendada; y 3) pautó la vista en su fondo para el 16 de noviembre de 2005.
Con estos pronunciamientos en mente, el 5 de octubre de 2005, el Departamento de Salud determinó que la controversia de autos es una sobre la aplicación de derecho, por lo que le ordenó a las partes que en el término de diez (10) días sometieran memorandos de derecho para mostrar causa por la cual no procede resolverse a base del expediente. En cumplimiento con esta Orden, Quadrangle sometió su memorando el 17 de octubre de 2005. Mediante el referido escrito le apercibió nuevamente al foro administrativo que el peso de la prueba le corresponde a la querellante y que ésta no le había notificado evidencia alguna.
Así las cosas, el Departamento de Salud hizo su determinación final de no resolver la controversia a base del expediente y sostuvo el señalamiento de vista en su fondo para el 16 de noviembre de 2005.
Dos días antes de celebrarse esta vista, All Imaging presentó su réplica en cumplimiento de orden y sometió, además, su parte correspondiente al Informe con Antelación a Vista. Mediante este informe, All Imaging anunció cuatro (4) testigos y cinco (5) piezas evidenciarías. La teoría, los testigos y la prueba documental que anunció estaban dirigidos a probar las alegaciones de la Querella Enmendada.
Finalmente, el 16 de noviembre de 2005, dio inicio la celebración de la vista en su fondo. Quadrangle objetó la presentación de testigos por parte de All Imaging y argumentó que se encontraba en estado de indefensión ante la prueba que pretendía presentar el querellante, toda vez que All Imaging no le contestó el interrogatorio que le fue cursado desde el 28 de diciembre de 2004. El Departamento de Salud optó por suspender la vista y le ordenó a las partes someter por escrito sus posturas respecto al planteamiento de Quadrangle.
En cumplimiento con esta Orden, Quadrangle presentó su escrito en el cual, esencialmente; alegó que All Imaging no poseía evidencia admisible que sostuviese sus alegaciones, dado el hecho de que la prueba no fue oportunamente notificada ni proveyó la lista de testigos. Por otro lado, All Imaging sometió su escrito en el cual razonó que:

“l. La desestimación de un pleito sin ir a sus méritos como un medio de sanción deber ser de los últimos recursos a utilizarse después que otras sanciones hayan probado ser ineficaces al orden de administrar justicia y, en todo caso, no debería procederse a ella sin previo apercibimiento.

2. La situación y circunstancias presentes en este caso ni la conducta de la parte Querellante ameritan la imposición de la desestimación como sanción. ”

Así las cosas, examinadas ambas posturas, el Departamento de Salud emitió su Resolución el 15 de febrero de 2006, notificada al día siguiente. Concluyó que la parte querellante-quedó impedida por sus propios actos de presentar prueba para sostener sus alegaciones; por lo tanto, procedía la desestimación de la causa de acción de All Imaging.
II
Inconforme con esta Resolución, recurre ante nos All Imaging y nos plantea que el Departamento de Salud erró al:

“1. Emitir determinaciones de hechos y conclusiones de derecho que no se sostienen por la evidencia sustancial que obra en el expediente administrativo.

2. Actuar de manera arbitraria, caprichosa, irrazonable y en abuso de su discreción al desestimar la querella 
*1089
como sanción contra All Imaging por incumplir con requisitos estatutarios.

3. Concluir que All Imaging quedó impedida por sus propios actos de presentar prueba para sostener sus alegaciones, cuando la parte querellada no actuó con manos limpias ni buena fe durante el proceso.

4. Firmar un Proyecto de Resolución "a ciegas”, el cual fue sometido por la parte querellada. ”

Por estar íntimamente relacionados entre sí, procedemos a resolver los simultáneamente planteamientos de error.
Para propósitos de facilitar el análisis del presente recurso, primero examinaremos el alcance de la revisión judicial de determinaciones administrativas. La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (en adelante, “LPAU'), dispone:

“El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. ” 3 LPRA §2175.
Esta sección ha sido ampliamente interpretada. El principio cardenal es que los organismos administrativos merecen la mayor deferencia de los tribunales, por ser éstas quienes tienen el conocimiento especializado en aquellos asuntos encomendados. De este modo, el criterio rector en la revisión judicial será la razonabilidad de la actuación administrativa. Otero Mercado v. Toyota de Puerto Rico, 163 DPR_, 2005 JTS 13.
El principio de deferencia administrativa y la presunción de razonabilidad impiden que el tribunal sustituya el criterio de la agencia por el suyo para hacer las determinaciones de hechos, siempre y cuando las mismas se sostengan por evidencia sustancial que obra en el expediente administrativo. La evidencia sustancial se refiere a “aquella [prueba] relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión . Socorro Rebollo v. Yiyi Motors, 161 DPR _, 2004 JTS 4. El Tribunal Supremo ha sido consistente en sostener que le corresponde a la parte recurrente de la resolución presentar suficiente prueba que demuestre que la actuación del organismo no se básó en evidencia sustancial o que reduzca el valor de la evidencia impugnada. Id.
En cuanto a las determinaciones de derecho, si bien es cierto que son revisables en todos sus aspectos, según dispone la LPAU, supra, no es menos cierto que los tribunales no poseen una “libertad absoluta de descartar ■libremente las conclusiones e interpretaciones de la agencia”. Otero Mercado, 2005 JTS 13, en la pág. 685.
En otras palabras, el Tribunal Supremo enumera los siguientes supuestos bajo los cuales la deferencia de la agencia cede: “cuando la determinación no está basada en evidencia sustancial; cuando el organismo administrativo erró al aplicar la ley; y cuando se trata de una actuación irrazonable o ilegal”. Román Matos v. Junta Examinadora, 165 DPR _, 2005 JTS 143; Véase, además, Hernández v. Centro Unido de Detallistas 168 DPR _, 2006 JTS 140.
La parte Recurrente alega que el Departamento de Salud utilizó el mecanismo de desestimación para sancionar a esta parte por un alegado incumplimiento con el descubrimiento de prueba. No le asiste la razón.
La LPAU establece que la agencia está facultada para imponer sanciones dentro de su función cuasi-judicial. *1090 3 LPRA §2170a. En primer lugar, si el promovente de la acción o el promovido por ella incumple con alguna de las reglas, reglamentos u órdenes de la agencia, ésta podrá ordenar que muestre causa, dentro del término de veinte (20) días, por la cual no deba imponérsele una sanción. Si la parte no cumple con esta orden o si la agencia entiende que la causa esbozada por la parte para haber incumplido no le satisface, podrá imponer una sanción económica que no habrá de exceder de $200.00 por cada imposición separada. Esta sanción podrá ir contra la parte o el abogado, si este último fue el responsable del incumplimiento. Por último, podrá ordenar la desestimación de la causa, si luego de haber impuesto sanciones económicas y haberla notificado a la parte correspondiente, ésta continúa incumpliendo las órdenes de la agencia. 3 LPRA §2170a.
Por su parte, el Reglamento Núm. 85, supra, contiene una disposición similar a la de la LPAU en materia de sanciones. El Artículo VIII, inciso (L)(18), establece que si cualquier parte dejare de cumplir con las disposiciones del reglamento o cualquier orden de la agencia, se le podrá ordenar una sanción económica de $200.00 por cada imposición separada y advertirá sobre la posibilidad de desestimar la causa de acción o eliminar las alegaciones de la parte si ocurre un segundo incumplimiento.
Ahora bien, ambas disposiciones están subordinadas por las garantías al debido proceso de ley, el derecho a presentar evidencia, a una adjudicación imparcial y a que la decisión se base en el expediente, según dispuesto por la sección 3.1 de la LPAU, supra. Aquella prueba que no haya sido provista a la parte opositora es inadmisible en la vista en.su fondo. Resolver lo contrario sería atentar contra la garantía al debido proceso de ley.
No podemos, perder de perspectiva que esta garantía está protegido por el artículo II, sección 7 de la Constitución de Puerto Rico. El debido proceso de ley tiene dos vertientes: la sustantiva y la procesal. La primera busca proteger y salvaguardar los derechos fundamentales de la persona. U. Ind. Emp. A.E.P. v. A.E.P., 146 DPR 611 (1998). La procesal le impone al Estado el deber de garantizar que todo procedimiento que tenga el efecto de interferir con los intereses de libertad y propiedad del individuo se haga de manera justa y equitativa. Id.
En el caso de autos, estamos ante consideraciones de garantía a un debido proceso de ley procesal. La primera determinación que se hace es examinar si hay un interés de propiedad o libertad que proteger. La parte Recurrida ciertamente tiene un interés propietario sobre el objeto en controversia. Establecido este punto, se examina cuál es el procedimiento justo para que no se vulnere la garantía. Sin duda alguna, dos componentes básicos son el derecho a ser escuchado y defenderse. Id. Tanto la LPAU como la Ley Núm. 85.
El debido proceso de ley será salvaguardado por el Oficial Examinador que preside la vista. Éste tiene la facultad de desestimar la querella cuando, entre otras causas, la parte querellante incumple' “con criterios o requisitos estatutarios o reglamentarios o por cualquier otro fundamento que en derecho proceda”. Artículo VII, (B) (5) del Reglamento Núm. 85. Asimismo, el Oficial Examinador tiene la potestad de determinar la forma y manera en que se efectuará el descubrimiento de prueba “dentro de los criterios de economía procesal y eficiencia que deben regir en todo organismo administrativo y en armonía con los términos de tiempo establecido en la Ley 170 del 12 de agosto de 1988, según enmendada. (Énfasis suplido.) Art. VIII, inciso (F)(2).
A la parte proponente de prueba documental se le impone la responsabilidad de facilitar la misma a la parte contraria, opositor e interventor. Art. VIII, inciso (L) (7). Este requisito es otro mecanismo que provee el Reglamento para salvaguardar el debido proceso de ley en la tramitación de la querella que tiene la agencia ante su consideración. Resulta inconsistente con este principio que una de las partes guarde para sí la prueba documental y testifical que pretende utilizar para sostener sus alegaciones, en claro menosprecio del derecho que tiene la parte opositora a conocer la prueba que alegadamente hay en su contra.
El inciso (11) de la Orden Gubernativa para Regir los Procedimientos de Vistas Administrativas del Departamento de Salud, aprobada el 1 de junio de 2004, prohíbe que se presente evidencia que no haya sido notificada dentro de los siguientes términos: diez (10) días antes de la presentación del Informe de Conferencia *1091 entre abogados o, en su defecto, quince (15) días antes del señalamiento de la vista en su fondo. Del expediente administrativo se desprende que la parte Recurrente no cumplió con estos términos.
En el caso de autos, la parte Recurrente tuvo ante sí el pliego de interrogatorios cursado por la parte Recurrida desde el 28 de diciembre de 2004. El Departamento de Salud celebró la vista en su fondo transcurrido casi un año desde la presentación de la querella en controversia. Todavía para esa fecha, la parte Recurrente no había contestado el interrogatorio ni notificado a la parte contraria la prueba testifical y documental que pretendía presentar para probar sus alegaciones. La parte Recurrente contestó el susodicho interrogatorio el 22 de noviembre de 2005. Resulta insostenible que pretenda subsanar su incumplimiento contestando el interrogatorio con posterioridad a la celebración de la vista en su fondo.
Tomamos nota de los planteamientos de la parte Recurrente a los efectos de que intentó comunicarse con la otra parte para preparar el Informe de Conferencia con Antelación a la Vista, pero que ésta no estuvo disponible. Esto es una cuestión de credibilidad a ser dirimida por el foro administrativo. No obstante, independientemente del resultado, se sostiene nuestra determinación de que el incumplimiento de la parte Recurrente con su deber de descubrir la prueba requerida, conlleva que esa evidencia que pretenda someter, sin haber sido anunciada sea inadmisible.
La parte Recurrente fue continuamente apercibida, por los planteamientos de la parte Recurrida ante el Departamento de Salud y por la propia agencia, de su responsabilidad en contestar el pliego de interrogatorios. Su inacción excedió lo razonablemente permitido en un caso administrativo donde se caracteriza por la tramitación de las controversias de forma rápida, justa y económica.
111
Luego de examinado la totalidad del expediente administrativo y el derecho aplicable, concluimos que el Departamento de Salud no cometió los errores señalados. En el caso de autos, no podemos interpretar la actuación de la agencia como una sanción contraria al mecanismo provisto para ello. Estamos ante una determinación cimentada en que la inacción-de la parte Recurrente para descubrir la prueba requerida le impide poder presentarla para su beneficio, en claro menosprecio de las garantías del debido proceso de ley. Ante la ausencia de otra prueba admisible que nos mueva a sustituir el criterio de la agencia por el nuestro, procede sostener la desestimación de su causa por insuficiencia de prueba.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones