ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| EX SGTO. JORGE RIVERA SÁNCHEZ,<br><br>Recurrente,<br><br>v.<br><br>POLICÍA DE PUERTO RICO,<br><br>Recurrida. | KLRA202400084 | REVISIÓN procedente de la Comisión de Investigación, Procesamiento y Apelación (CIPA).<br><br>Caso núm.: 22P-93.<br><br>Sobre: expulsión. |
|---|---|---|

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 4 de abril de 2024.

El señor Jorge Rivera Sánchez (señor Rivera Sánchez o recurrente) instó este recurso de revisión judicial el 16 de febrero de 2024. Nos solicita la revisión de la *Resolución* emitida por la Comisión de Investigación, Procesamiento y Apelación (CIPA) el 22 de agosto de 2023, notificada el 17 de enero de 2024. Mediante esta, la CIPA declaró con lugar la *Moción de Desestimación* presentada por el Negociado de la Policía de Puerto Rico (Negociado) y confirmó la expulsión del recurrente del puesto que ocupaba en la Policía. A su vez, tomó conocimiento judicial de la *Sentencia* que emitió un panel hermano el 20 de mayo de 2022, en el alfanumérico KLCE202200152, *Jeisha Marie Rodríguez Díaz v. Jorge Luis Rivera Sánchez.* En virtud de lo anterior, declaró sin lugar la apelación que había instado el recurrente.

Evaluados los escritos de las partes comparecientes, resolvemos revocar la *Resolución* recurrida.

I

El **10 de julio de 2018**, la señora Jeisha M. Rodríguez Díaz (señora Rodríguez Díaz) presentó ante el Negociado la querella administrativa núm. 2018-00-34-110, en contra del señor Rivera Sánchez, quien en ese entonces ocupaba el puesto de sargento. En ella, le imputó al recurrente

Número identificador

SEN2024_____

conducta constitutiva de violencia doméstica, en su modalidad de maltrato físico y emocional. Según su querella, los hechos ocurrieron en **noviembre de 2017, 11 de enero, 30 de abril y 5 de mayo de 2018**.

A raíz de la querella presentada por la señora Rodríguez Díaz, el Negociado, por conducto del Negociado de Investigaciones en Asuntos Antidiscriminatorios adscrito a la Superintendencia Auxiliar de Responsabilidad Profesional, comenzó una investigación administrativa.

Concluida la investigación, el **10 de abril de 2020**, el Negociado emitió una *Resolución*[1], que se notificó el **5 de noviembre de 2020**, en la cual el Comisionado del Negociado notificó al señor Rivera Sánchez de su intención de destituirle del puesto que ocupaba en la Policía. Le apercibió de su derecho a la celebración de una vista informal.

En la resolución aludida, el Comisionado le imputó una violación al Art. 14, sección 14.6.1, faltas graves 7, 18, 29, 31 y 32, y falta leve 1 del Reglamento Núm. 9001, intitulado *Reglamento para enmendar el Artículo 14 del Reglamento de Personal de la Policía de Puerto Rico* (Reglamento 9001), aprobado el 29 de agosto de 2017.

En lo pertinente, dicha *Resolución* señaló que, el **11 de enero de 2018**, la señora Rodríguez Díaz, con quien el recurrente había procreado un hijo, se encontraba laborando en un establecimiento de comida rápida cuando, cercano a la hora de cierre del establecimiento, el señor Rivera Sánchez llegó al local sin avisar y se molestó al ver que un empleado se encontraba en el restaurante por motivos de seguridad. Expuso que el recurrente discutió con dicho empleado y empujó a la señora Rodríguez Díaz para montarla en su vehículo de motor. Destacó que el empleado se dirigió a unos agentes del orden público y les informó que en el establecimiento había ocurrido un incidente de violencia doméstica.

Posteriormente, el recurrente se dirigió al cuartel de Santurce y le manifestó al sargento Jerry Quesada que había discutido con su pareja y le sugirió que le preguntara a la señora Rodríguez Díaz si se sentía

---

[1] *Véase*, apéndice del recurso, a las págs. 4-9.

insegura o intimidada. Manifestó que el recurrente llevó a la señora Rodríguez Díaz al cuartel para demostrarle que, si presentaba una querella en su contra, esta resultaría fútil, pues no se tomaría acción alguna en su contra.

Además, la *Resolución* apuntó que, el **15 de mayo de 2018**, el sargento Rivera Sánchez se presentó a la residencia de la señora Rodríguez Díaz, entró a la casa con su arma de fuego en mano y comenzó a revisar la residencia. Indicó que dicho incidente ocurrió en presencia de su hijo.

También, la *Resolución* expuso que, para el mes de **noviembre de 2017**, el recurrente y la señora Rodríguez Díaz se encontraban en un centro comercial para ver una película con su hijo, tuvieron una discusión, por lo que este se molestó, la agarró por el brazo, la encerró dentro del vehículo y se marchó al cine con el menor.

Por último, la *Resolución* consignó que, en otra ocasión, el recurrente tuvo relaciones sexuales con la señora Rodríguez Díaz sin el consentimiento de esta.

Luego de celebrada la **vista informal el 10 de mayo de 2021**, el **9 de febrero de 2022**, el Negociado emitió su *Resolución Final*[2], que se notificó el **26 de mayo de 2022**, en la que confirmó la sanción anunciada en la *Resolución* del 10 de abril de 2020, y, en consecuencia, expulsó al recurrente de su puesto.

En desacuerdo con la determinación del Negociado, el **24 de junio de 2022**, el señor Rivera Sánchez presentó su *Apelación*[3] ante la CIPA. En síntesis, alegó que la dilación en la investigación y adjudicación del proceso administrativo, así como las notificaciones sobre este, había violentado su derecho a un debido proceso de ley, dado que el Negociado tardó más de cuatro (4) años en investigar y adjudicar los hechos. De igual forma, esbozó que se había violentado su derecho a un debido proceso de ley toda vez

---

[2] *Véase*, apéndice del recurso, a las págs. 10- 14.

[3] *Íd.*, a las págs. 15-24.

que se había incumplido con los términos establecidos en las leyes y reglamentos aplicables.

Además, el señor Rivera Sánchez arguyó que la determinación del Negociado no estaba sustentada en prueba clara, robusta y convincente, debido a que no se tomó en consideración que la pareja estaba inmersa en un litigio por la custodia de su hijo menor de edad y que la madre del menor había solicitado una orden de protección en su contra por **hechos ocurridos el 2 de julio de 2018**, la cual fue declarada sin lugar. Por lo anterior, solicitó la reinstalación a su puesto y que se ordenase el pago de los salarios dejados de percibir.

Posteriormente, el **8 de agosto de 2022**, la CIPA remitió un correo electrónico[4] a la representación legal del señor Rivera Sánchez, en la cual señaló vista para el 23 de marzo de 2023, a la 1:00 pm.

Entretanto, el 18 de enero de 2023, el Negociado presentó su *Contestación*[5] a la apelación y negó la mayoría de las alegaciones. Como defensas afirmativas, planteó que los términos para la implantación de la acción disciplinaria eran de carácter directivo. Sostuvo que las decisiones administrativas estaban cobijadas por una presunción de legalidad y corrección. Además, argumentó que el Comisionado tenía la facultad en ley de imponer sanciones disciplinarias en contra de un miembro del cuerpo de la Policía, cuya conducta estuviera en contravención a sus normas. Añadió que el Negociado había garantizado el derecho del recurrente a un debido proceso de ley, dado que le había brindado la oportunidad de presentar argumentos a su favor en la vista informal celebrada.

Tras varios trámites procesales, el 7 de marzo de 2023, el Negociado presentó una *Moción de Desestimación*[6]*.* Argumentó que la señora Rodríguez Díaz había solicitado dos órdenes de protección por presuntos incidentes de violencia doméstica, las cuales fueron declaradas

---

[4] *Véase*, apéndice del recurso, a la pág. 39.

[5] *Íd.*, a las págs. 45-46.

[6] *Íd.*, a las págs. 99-132.

con lugar. Igualmente, argumentó que, mientras el caso ante nuestra consideración se encontraba pendiente de investigación y adjudicación, se suscitaron unos hechos que convirtieron la controversia en una no justiciable. En específico, indicó que, el **18 de octubre de 2018**, el Tribunal de Primera Instancia había expedido una orden de protección por un (1) año a favor de la señora Rodríguez Díaz, al amparo de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, intitulada *Ley para la Prevención e Intervención con la Violencia Doméstica,* 8 LPRA sec. 601, *et seq.* (Ley Núm. 54). Aclaró que el foro primario había concluido que la señora Rodríguez Díaz había sido víctima de un patrón de maltrato emocional por parte del recurrente.

En su solicitud de desestimación el Negociado destacó, además, que, el **2 de diciembre de 2021**, el foro primario había expedido otra orden de protección a favor de la señora Rodríguez Díaz por un término de dos (2) años, toda vez que determinó que el patrón de maltrato había continuado. Enfatizó que dicha determinación fue apelada sin éxito ante este foro.

Con relación a la orden de protección del 2 de diciembre de 2021, el recurrente instó un recurso de *certiorari* ante este foro el 11 de febrero de 2022, en el cual impugnó la expedición de la orden. El **20 de mayo de 2022**, un panel hermano emitió su *Sentencia* en el recurso KLCE202200152. En ella, este Tribunal expidió el auto de *certiorari* y confirmó la determinación recurrida. En específico, concluyó que la prueba recibida por el foro primario había establecido los elementos propios de violencia psicológica, según tipificada en la Ley Núm. 54. A su vez, determinó que los hechos relatados por la señora Rodríguez Díaz, y creídos por el foro primario, habían establecido un patrón de vigilancia por parte del recurrente, siendo el medio para ello su hijo menor de edad.

Inconforme con la determinación de este foro intermedio, el señor Rivera Sánchez acudió ante el Tribunal Supremo de Puerto Rico, mediante

una petición de *certiorari*. El **13 de enero de 2023**, el Tribunal Supremo denegó la expedición del auto.

En virtud de lo anterior, en su solicitud de desestimación ante la CIPA, el Negociado razonó que la conducta del recurrente lo incapacitaba para pertenecer a la Policía y que, habiéndose probado los actos constitutivos de la violación a la Ley Núm. 54, la controversia ante la CIPA resultaba académica.

En desacuerdo, el 5 de mayo de 2023, el señor Rivera Sánchez presentó su oposición a la moción de desestimación[7]. Arguyó que el Negociado había fundamentado su moción de desestimación en hechos adicionales que no eran parte del expediente administrativo. Sostuvo que el Negociado proponía hechos posteriores a los ocurridos el 11 de enero de 2018, como fue la orden de protección del 18 de octubre de 2018, y la *Sentencia* dictada por este Tribunal el 20 de mayo de 2022, con el fin de robustecer la decisión del Negociado. Es decir, adujo que el proceder del Negociado era ilegal y censurable, dado que la moción de desestimación se intentaba utilizar como subterfugio para incluir hechos ocurridos dos años después de los hechos que motivaron su destitución. Por último, indicó que la recurrida incluyó documentos en la moción de desestimación que no habían sido admitidos en evidencia[8].

El 11 de mayo de 2023, la CIPA emitió una *Resolución*[9], notificada en esa misma fecha, en la cual señaló una vista para el 22 de agosto de 2023, a la 1:00 pm.

No obstante, el 9 de julio de 2023, el recurrente presentó una *Solicitud de Disposición Sumaria*[10]. En esencia, planteó que el Negociado tardó cuatro (4) años y cuatro (4) meses en investigar y adjudicar la

---

[7] *Véase*, apéndice del recurso, a las págs. 140-145.

[8] *Íd.*, a las págs. 154-157. El 17 de mayo de 2023, el Negociado presentó su *Réplica a la enérgica réplica a moción de desestimación*.

[9] *Íd.*, a la pág. 153.

[10] *Íd.*, a las págs. 164-173.

querella. Es decir, la investigación comenzó el 11 de enero de 2018, y culminó el 26 de mayo de 2022, fecha en que se notificó la *Resolución* final.

Señaló que, conforme al acuerdo núm. 179 del *Acuerdo para la Reforma Sostenible de la Policía de Puerto Rico,* aprobado el 17 de julio de 2013, el Negociado contaba con un término de noventa (90) días, computado a partir del recibo de la querella, para culminar las investigaciones administrativas, y podía conceder prórrogas de treinta (30) días, hasta un máximo de noventa (90) días adicionales en total. Por tanto, razonó que el Negociado había incumplido el término establecido y había violentado su derecho a un debido proceso de ley.

El señor Rivera Sánchez también apuntó que, como a la fecha de la presentación de la querella administrativa no había incurrido en violación alguna a la Ley Núm. 54, y estando atadas las faltas imputadas a dicho estatuto, procedía exonerarle y ordenar su restitución.

Luego de celebrada la vista argumentativa el 22 de agosto de 2023, la CIPA emitió una *Resolución*[11], **notificada el 17 de enero de 2024**, en la cual declaró con lugar la *Moción de Desestimación* que presentara el Negociado. En lo pertinente, acogió y adoptó por referencia los planteamientos esbozados en dicha moción, y tomó conocimiento judicial de la *Sentencia* emitida por este foro intermedio el 20 de mayo de 2022, en el recurso KLCE202200152. En virtud de lo anterior, declaró sin lugar la apelación y confirmó la expulsión del recurrente.

Valga apuntar que, previo a la *Resolución* final de la CIPA notificada el 17 de enero de 2024, allá para el 28 de agosto de 2023, el señor Rivera Sánchez había presentado una moción[12] en la que explicaba que, el día de la vista, la CIPA había ordenado a las partes que argumentaran las razones por las cuales no debía resolver el caso a base de la *Sentencia* emitida por este foro el 20 de mayo de 2022. El recurrente argumentó que la CIPA no podía tomar en consideración dicha *Sentencia*, dado que los hechos ante

---

[11] *Véase*, apéndice del recurso, a las págs. 1-3.

[12] *Íd.*, a las págs. 194-196.

su consideración eran distintos a los investigados e imputados en la resolución de intención de despido.

Además, planteó que el Negociado había omitido informar que los hechos correspondientes al 2021 estaban en proceso de investigación ante el Negociado, y que dicha investigación no había culminado, por lo que la CIPA no tenía jurisdicción respecto a los hechos del 2021.

Por su parte, el 29 de agosto de 2023, la recurrida presentó su *Oposición*[13]. Enfatizó que, en el mes de octubre de 2018, se había expedido una orden de protección en contra del recurrente. Esto, mientras se llevaba a cabo la investigación administrativa por violencia doméstica iniciada a raíz de la querella presentada por la señora Rodríguez Díaz el 10 de julio de 2018. Además, el Negociado adujo que, en la vista sobre la orden de protección celebrada en el 2018, un tribunal había aquilatado la prueba relacionada a los actos constitutivos de violencia doméstica y había concedido el remedio solicitado por la señora Rodríguez Díaz. Así pues, solicitó que la CIPA tomara conocimiento de dichas órdenes de protección y de la *Sentencia* confirmatoria emitida por este foro, y desestimara la apelación del recurrente.

En su oposición, el Negociado añadió que, durante la vista que se celebrase el 22 de agosto de 2023, el sargento Rivera Sánchez no había informado que, durante el transcurso de la investigación administrativa, un tribunal había expedido dos (2) órdenes de protección en su contra. Además, apuntó que, conforme al Reglamento Núm. 9001, las faltas graves por actos constitutivos de violencia doméstica no dependían del resultado del proceso penal, ni tampoco estaban sujetas a la radicación de cargos criminales. Es decir, dicho Reglamento solo requería que la investigación administrativa reflejara que el recurrente había incurrido en la conducta por la que se le había sancionado.

Como indicado, la CIPA emitió su *Resolución* el 22 de agosto de 2023, y la notificó el 17 de enero de 2024. Inconforme con esa

---

[13] *Véase*, apéndice del recurso, a las págs. 197-199.

determinación, el 16 de febrero de 2024, el recurrente presentó este recurso, en el que apuntó la comisión de los siguientes errores:

> Erró la CIPA al asumir jurisdicción mediante una solicitud de desestimación sobre alegados hechos posteriores de los cuales no existe acción disciplinaria, investigación, formulación de cargos y ningún proceso de vista informal.
>
> Erró la CIPA al utilizar el mecanismo de la desestimación para adjudicar el presente caso, sin la celebración de la vista en su fondo existente controversias sustanciales de hecho y de derecho según se expuso en múltiples ocasiones ante la CIPA.
>
> Erró la CIPA al decidir este caso tomando conocimiento judicial de una Sentencia del Tribunal de Apelaciones (caso KLCE202200152) así como documentos totalmente ajenos e impertinentes a los hechos objeto del presente caso.
>
> Erró la CIPA al no incorporar en su Resolución determinaciones de hechos y conclusiones de Derecho.

(Énfasis omitido).

El 18 de marzo de 2024, el Negociado presentó su alegato en oposición[14].

## II

### A

En nuestro ordenamiento jurídico un empleado público de carrera ostenta un interés propietario sobre su empleo, que se encuentra protegido por la Constitución del Estado Libre Asociado de Puerto Rico, así como por la de los Estados Unidos de América. *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 46-47 (2010). Es decir, posee una expectativa de continuidad en el empleo, que forma parte de su derecho de propiedad, del cual no puede ser privado sin que medie el debido proceso de ley. *Vázquez Cintrón v. Banco Desarrollo*, 171 DPR 1, 21 (2007).

A la luz de lo anterior, para que sea válida la destitución de un empleado público tiene que mediar justa causa y la celebración de una vista, lo contrario implicaría despojar a un empleado de su propiedad sin el debido proceso de ley. *Torres Solano v. P.R.T.C.,* 127 DPR 499, 520 (1990). En específico, "sólo pod[rá] ser destituid[o] previa formulación de

---

[14] El 1 de abril de 2024, el recurrente presentó una moción intitulada *Réplica a escrito en cumplimiento de orden*. Tal réplica no fue autorizada por este Tribunal, por lo que se tiene por no presentada.

los cargos, la celebración de una vista y una justa causa, es decir, con el debido proceso de ley". *Vázquez Cintrón v. Banco Desarrollo*, 171 DPR, a la pág. 24.

La aplicabilidad de las garantías de un debido proceso de ley en su vertiente procesal exige que un interés propietario o de libertad se vea afectado. En todo procedimiento adjudicativo ante una agencia, se deberá salvaguardar las garantías de un debido proceso de ley. No obstante, el debido proceso de ley en la esfera administrativa no tiene la misma rigidez que se reconoce en la esfera penal. *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR 109, 113 (1996). Sí se requiere que todo proceso adjudicativo sea uno justo y equitativo, que respete la dignidad de los individuos afectados. *Íd.* Por lo tanto, es imperativo que en toda adjudicación formal en la que se intervenga con la libertad o propiedad de una persona se cumpla rigurosamente con estas garantías.

En el contexto de procedimientos adversativos, la jurisprudencia ha establecido que, para que se configure un debido proceso de ley, se deben cumplir los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y, (6) que la decisión se base en el récord. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 889 (1993).

La controversia ante nos gira en torno a las garantías del debido proceso de ley en su vertiente procesal. Conforme a lo anterior, es menester puntualizar que la Sección 3.1 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada (LPAUG), establece que, en todo **procedimiento adjudicativo formal** ante una agencia, se salvaguardarán los siguientes derechos:

(A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.

(B) Derecho a presentar evidencia.

(C) Derecho a una adjudicación imparcial.

(D) Derecho a que la decisión sea basada en el expediente.

.    .    .    .    .    .    .    .    .

3 LPRA sec. 9641.

En lo pertinente, el debido proceso de ley en su vertiente procesal exige una **notificación adecuada y oportuna** en los procedimientos adversativos. La notificación de las determinaciones administrativas concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia y otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad de decidir si ejercen los remedios que la ley les reserva para impugnar la determinación. *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996). Ante ello, resulta indispensable que se notifique adecuadamente cualquier determinación de la agencia que afecte los intereses de un ciudadano. *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 329 (2006).

Así pues, cuando una agencia emite una determinación administrativa formal, se activan las garantías que exige el debido proceso de ley. La agencia, para cumplir con el debido proceso de ley, deberá celebrar una vista adjudicativa formal, siempre que intervenga con los intereses propietarios de los empleados de carrera.

En lo pertinente a la controversia ante nuestra consideración, en el caso *U. Ind. Emp. A.E.P. v A.E.P.,* 146 DPR 611, 620-621 (1998), el Tribunal Supremo de Puerto Rico determinó que **no es posible que la carta de intención de despido haya servido como notificación adecuada a la vista informal, cuando el incidente que motivó el despido del empleado no fue el incidente que dio base a la suspensión que se le notificó en dicha carta, sino que fueron incidentes que ocurrieron con posterioridad a la misma**.

B

El Art. 2 de la Ley Núm. 32 del 22 de mayo de 1972, también conocida como *Ley de la Comisión de Investigación, Procesamiento y*

*Apelación*, 1 LPRA sec. 171, *et seq.* (Ley Núm. 32), establece que la CIPA tiene la facultad de actuar como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por ese estatuto. 1 LPRA sec. 172. Asimismo, dispone que la CIPA es el organismo alterno e independiente con autoridad para intervenir en casos en los que se impute mal uso o abuso de autoridad a cualquier funcionario del orden público estatal o municipal, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva autorizado a realizar arrestos. 1 LPRA sec. 172.

La Ley Núm. 32 también dispone que la CIPA, dentro de su facultad apelativa, celebrará vistas. 1 LPRA sec. 173. **Dicha vista se trata de un proceso *de novo* en el cual la CIPA, como organismo administrativo, tiene la oportunidad de escuchar nuevamente toda la prueba y otorgarle el valor probatorio que a su juicio esta merezca.** *Torres Rivera* v*. Pol. de PR*, 196 DPR 606, 623 (2016). Debido a que en ella se ventilan de manera definitiva todos los derechos del empleado y las determinaciones de hechos solo son sujetas al limitado ámbito de la revisión judicial, dicha vista es equivalente a un juicio en sus méritos. *Íd.,* a la pág. 621. Además, el Tribunal Supremo de Puerto Rico ha expresado que la vista que se celebra ante la CIPA es propiamente una vista formal. *Ramírez v. Policía de PR,* 158 DPR 320, 334 (2003).

Conforme a sus facultades, la CIPA promulgó el Reglamento Núm. 7952, intitulado *Reglamento para la presentación, investigación y adjudicación de querellas y apelaciones ante la Comisión de Investigación, Procesamiento y Apelación* (Reglamento Núm. 7952), que se aprobó el 1 de diciembre de 2010. El Art. 2 inciso 2 de dicho Reglamento establece que la CIPA podrá decretar el archivo de un caso sin celebrar vista cuando la querella carece de méritos y de su propia faz surge que es frívola.

A su vez, el Art. 26 del Reglamento 7952 dispone que,

> [l]a Comisión y/o el Juez Administrativo podrá desestimar o disponer sumariamente de una querella o de una apelación motu proprio o a solicitud de parte, de entender que la misma no plantea hechos que justifiquen la concesión de un

remedio, o si no habiendo controversia real en los hechos, como cuestión de derecho, procede se dicte resolución a favor de la parte promovente.

Por su parte, la Sección 3.7 (b) de la Ley Núm. 38-2017, según enmendada, también conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601, *et seq.* (LPAUG), dispone que,

> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final o parcial resolviendo cualquier controversia entre las partes, que sean separables de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario. La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede.

3 LPRA sec. 9647(b).

III

En primer lugar, resulta pertinente señalar que el señor Rivera Sánchez es un empleado regular de carrera[15], por lo que nos corresponde determinar si se siguió el procedimiento adecuado para privarle de su interés propietario sobre su puesto.

Según el precitado derecho, en nuestro ordenamiento jurídico un empleado público de carrera ostenta un interés propietario sobre su empleo, que se encuentra protegido por la Constitución del Estado Libre Asociado de Puerto Rico, así como por la de los Estados Unidos de América. *Domínguez Castro et al. v. E.L.A. I*, 178 DPR, a las págs. 46-47. Es decir, posee una expectativa de continuidad en el empleo, que forma

---

[15] *Véase*, Reglamento Núm. 4216 intitulado *Reglamento de Personal de la Policía de Puerto Rico* que se aprobó el 11 de mayo de 1990, a la págs. 30-31. Dicho Reglamento define el servicio de carrera como aquél que comprenderá los trabajos no diestros, semidiestros y diestros, así como las funciones profesionales, técnicos y administrativas hasta el nivel más alto en que sean separables de la función asesorativa o normativa. Los trabajos y funciones comprendidos en el servicio de carrera estarán mayormente subordinados a pautas de política pública y normas programáticas que se formulan y prescriben en el servicio de confianza.

parte de su derecho de propiedad, del cual no puede ser privado sin que medie el debido proceso de ley. *Vázquez Cintrón v. Banco Desarrollo*, 171 DPR, a la pág. 21.

A pesar de que el debido proceso de ley en la esfera administrativa no tiene la misma rigidez que se reconoce en la esfera penal, sí se requiere que todo proceso adjudicativo sea uno justo y equitativo, que respete la dignidad de los individuos afectados. *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR, a la pág. 113. Por ello, resulta imperativo que en toda adjudicación formal en la que se intervenga con la libertad o propiedad de una persona, se cumpla rigurosamente con estas garantías. Entre los requisitos que la jurisprudencia ha establecido para que se configure el debido proceso de ley, se encuentra el derecho a una notificación adecuada del proceso. Asimismo, la Sección 3.1 de la LPAUG, dispone que en todo procedimiento adjudicativo formal ante una agencia se salvaguardará el derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.

De otra parte, la Ley Núm. 32 dispone que la CIPA celebrará una vista, la cual se trata de un proceso *de novo*. En dicha vista, la CIPA, como organismo administrativo, tiene la oportunidad de escuchar nuevamente toda la prueba y otorgarle el valor probatorio que a su juicio esta merezca. *Torres Rivera* v. *Pol. de PR*, 196 DPR, a la pág. 623.

El expediente ante nuestra consideración refleja que la señora Rodríguez Díaz presentó una querella administrativa ante el Negociado el **10 de julio de 2018**[16]. Lo hechos que generaron esa querella ocurrieron en **noviembre de 2017**, **11 de enero**, **30 de abril** y **5 de mayo de 2018**.

Como resultado de la investigación inicial realizada por el Negociado, el **10 de abril de 2020**[17], el Comisionado emitió una

---

[16] Nótese que, previo a la presentación de la querella administrativa el 10 de julio de 2018, la señora Rodríguez Díaz había solicitado una orden de protección al amparo de la Ley Núm. 54. Esta fue denegada el **2 de julio de 2018**.

[17] Apuntamos que, a esa fecha, ya la señora Rodríguez Díaz había solicitado otra orden de protección al amparo de la Ley Núm. 54, que le fue concedida el **18 de octubre de 2018**, y cuya efectividad era por un año.

*Resolución*, en la cual apercibió al recurrente de su intención de destituirle del puesto que ocupaba en la Policía y de su derecho a la celebración de una vista informal. Los hechos imputados en esa intención de destitución ocurrieron en **noviembre de 2017, 11 de enero, 30 de abril y 5 de mayo de 2018**.

El **10 de mayo de 2021**, se celebró la vista informal solicitada por el recurrente. El **9 de febrero de 2022[18]**, notificada el **26 de mayo de 2022**, el Negociado emitió su *Resolución* final, en la que confirmó la sanción anunciada y, en consecuencia, expulsó al recurrente de su puesto.

Insatisfecho, el **24 de junio de 2022**, el señor Rivera Sánchez presentó su apelación ante la CIPA. Tras varios trámites procesales, el **22 de agosto de 2023**, la CIPA emitió su *Resolución*, la cual fue notificada el **17 de enero de 2024**. En ella, la CIPA declaró con lugar la moción de desestimación presentada por el Negociado y tomó conocimiento judicial de la *Sentencia* emitida por este foro intermedio el **20 de mayo de 2022**, en el recurso KLCE202200152. Cabe precisar que, en dicho recurso, lo que impugnaba el señor Rivera Sánchez era la orden de protección que el foro primario había expedido a favor de la señora Rodríguez Díaz el **2 de diciembre de 2021**, por hechos ocurridos en el 2021.

Enfatizamos que la CIPA acogió la moción de desestimación del Negociado y tomó conocimiento de la impugnación de una orden de protección por hechos ocurridos en el año 2021. No obstante, la apelación que tenía ante su consideración trataba de la destitución del recurrente, según confirmada en la *Resolución* del Negociado del **9 de febrero de 2022, notificada el 26 de mayo de 2022**. En esta, igual que en la resolución de intención de destitución del 10 de abril de 2020, el Negociado se basó en hechos ocurridos en noviembre de 2017, 11 de enero, 30 de abril y 5 de mayo de 2018. Es decir, lo que motivó la expulsión del señor

---

[18] A esa fecha, ya el Tribunal de Primera Instancia había emitido una segunda orden de protección a favor de la señora Rodríguez Díaz. Esto fue el **2 de diciembre de 2021**, y tuvo una vigencia de dos años. Esta es la orden de protección revisada por el señor Rivera Sánchez ante este tribunal intermedio en el KLCE202200152, en cuya sentencia emitida el **20 de mayo de 2022**, se confirmó la determinación del foro primario. El **13 de enero de 2023**, el Tribunal Supremo denegó la expedición del auto de *certiorari*.

Rivera Sánchez no fueron los incidentes ocurridos en el 2021, sino los hechos alegados en las resoluciones del Negociado del 10 de abril de 2020, y del 9 de febrero de 2022; es decir, los hechos acaecidos entre noviembre de 2017, hasta mayo de 2018.

A la luz de estos hechos, nos parece evidente que la CIPA erró en su determinación, pues tomó conocimiento judicial de incidentes que ocurrieron con posterioridad a los hechos imputados en la *Resolución* de intención de despido del 10 de abril de 2020, y en la *Resolución* de despido del 9 de febrero de 2022, que, a su vez, constituyó el resultado de la celebración de la vista informal celebrada el 10 de mayo de 2021. Ello, indudablemente conllevó la violación al derecho a un debido proceso de ley que cobija al recurrente.

Así pues, procede que la CIPA celebre una vista *de novo*. En específico, que aquilate únicamente los hechos ocurridos en noviembre de 2017, 11 de enero, 30 de abril y 5 de mayo de 2018; hechos por los cuales el Negociado investigó al señor Rivera Sánchez y por los que le despidió.

En virtud de lo anterior, ordenamos a la CIPA que celebre una vista *de novo*, en la cual **tenga la oportunidad de escuchar nuevamente toda la prueba pertinente a la controversia ante sí y le otorgue el valor probatorio que a su juicio esta merezca.** Ello, respecto a los hechos ocurridos en noviembre de 2017, 11 de enero, 30 de abril y 5 de mayo de 2018.

Por último, debemos destacar que resultan lamentables las demoras en las que incurrió el Negociado y la CIPA en este caso. Ello, sin embargo, no conlleva la revocación de todo el proceso administrativo ni la restitución del recurrente a su puesto. El señor Rivera Sánchez tenía a su disposición el recurso de *mandamus*[19] para lograr la adjudicación más ágil y eficiente del proceso en su contra; no obstante, optó por no ejercer ese derecho.

---

[19] A esos efectos, nos remitimos a la decisión del Tribunal Supremo en *J. Exam. Tec. Méd. v. Elías, et al.*, 144 DPR 483 (1997). En ella se dispuso que: "[p]ara asegurar que las agencias cumplan con la letra de la ley, el remedio judicial que tiene disponible una parte cuando una agencia no resuelve un caso dentro del término establecido por la L.P.A.U. es la presentación de un *mandamus* en el Tribunal de Circuito de Apelaciones." *Íd.*, a la pág. 495.

IV

Por los fundamentos anteriormente expuestos, **revocamos** la *Resolución* emitida por la Comisión de Investigación, Procesamiento y Adjudicación el 22 de agosto de 2023, notificada el 17 de enero de 2024, y ordenamos la celebración de una vista en su fondo de conformidad con los lineamientos de esta sentencia.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones