Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| RICHARD GONZÁLEZ GAUTIER<br><br>Recurrente<br><br>V.<br><br>POLICÍA DE PUERTO RICO<br><br>Recurrido | KLRA202500319 | Revisión procedente de la Comisión de Investigación, Procesamiento y Apelación de la Policía de Puerto Rico<br><br>Caso Núm.: 17P-112<br><br>Sobre: Expulsión |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de agosto de 2025.

Comparece el señor Richard González Gautier (recurrente) en solicitud de que revisemos una *Resolución Sumaria* emitida el 5 de febrero de 2025 por la Comisión de Investigación, Procesamiento y Apelación (CIPA).[1] En el referido dictamen, la CIPA confirmó la decisión del Negociado de la Policía de Puerto Rico (NPPR o recurrido) de expulsar al señor González Gautier por resultar positivo en la prueba de detección de sustancias controladas, en violación al *Reglamento del Programa para la Detección de Sustancias Controladas en Funcionarios y Empleados de la Policía de Puerto Rico*, Reglamento Núm. 6403, Departamento de Estado, 8 de marzo de 2002 (*Reglamento para la Detección de Sustancias Controladas*).

Por los fundamentos que expondremos a continuación, se confirma la determinación recurrida.

**I.**

Este caso se originó el 16 de junio de 2016, cuando el entonces superintendente del NPPR emitió una *Suspensión Sumaria de Empleo*

---

[1] Apéndice del *Recurso de Revisión Administrativa*, Anejo 1, págs. 1-7. Notificada el 1 de mayo de 2025.

*y Resolución de Cargos* al señor González Gautier.[2] En dicho documento, se indicó que el 15 de abril de 2016 el Instituto de Ciencias Forenses llevó a cabo una inspección de sustancias controladas en el Precinto de Hato Rey Oeste y Patrullas Carreteras de San Juan y que el recurrente resultó positivo al metabolito de marihuana en el análisis de laboratorio.

Añadió que el 13 de junio de 2016, el oficial médico revisor oficial, el Dr. Carlos Robles Mora, entrevistó al señor González Gautier para indagar si existía alguna razón médica que justificara el resultado. No obstante, el galeno no identificó justificación médica alguna, por lo que ratificó el resultado positivo. Ante ello, el superintendente del NPPR concluyó que el recurrente infringió el Artículo 14, Sección 14.5, Incisos 1, 15 y 27 del *Reglamento de Personal del NPPR*, Departamento del Estado, Reglamento Núm. 4216, 11 de mayo de 1990, así como el Artículo 5 del *Reglamento para la Detección de Sustancias Controladas, supra.* Por tal motivo, expresó su intención de destituirlo del cargo y lo citó a una vista informal administrativa.

Posteriormente, el 28 de diciembre de 2016, el superintendente del NPPR envió una *Resolución Final de Expulsión* al señor González Gautier.[3] Mediante esta, precisó que, tras celebrarse la vista informal y reevaluar el caso, decidió confirmar la medida disciplinaria originalmente impuesta y ordenar su expulsión del NPPR.

Inconforme, el 26 de enero de 2017, el recurrente presentó una *Apelación* ante la CIPA, en la que alegó que el NPPR actuó ilegalmente al no culminar la vista administrativa debidamente ni aplicar la legislación vigente.[4] En particular, señaló que el oficial examinador le otorgó un término para presentar un memorando de derecho el cual

---

[2] *Íd.*, Anejo 2, págs. 8-10.
[3] *Íd.*, Anejo 3, págs. 11-13.
[4] *Íd.*, Anejo 4, págs. 14-24.

presentó el 11 de enero de 2017, dentro del plazo concedido. No obstante, esgrimió que se envió el expediente del caso a la Oficina de Asuntos Legales del NPPR con una nota del término adicional, pero que la *Resolución Final de Expulsión* se notificó el 9 de enero de 2017, sin que se considerara su posición. Sostuvo que ello constituyó una grave violación a su debido proceso de ley. De igual manera, planteó que, al momento en que arrojó positivo a marihuana, dicha sustancia había sido eliminada de las pruebas de dopaje en los empleados públicos, a tenor con los Boletines Administrativos OE-2015-010, OE-2015-35 y OE-2015-45 de la Oficina del Gobernador y la Orden Administrativa 2015-12 del Departamento de Justicia. Por ello, solicitó la desestimación de los cargos en su contra y su reinstalación en el empleo.

En respuesta, el 1 de marzo de 2017, el NPPR presentó una *Moción en Reacción a Memorando.*[5] En síntesis, precisó que este caso versaba sobre la imposición de una medida disciplinaria de expulsión por el recurrente incurrir en negligencia, uso de sustancias no recetadas y violaciones a los incisos 1, 15 y 25 del *Reglamento de Personal del NPPR, supra.* Argumentó que el oficial examinador le concedió hasta el 22 de diciembre de 2016 para presentar sus alegaciones, lo cual no realizó.

El recurrido adujo que el señor González Gautier ofreció versiones inconsistentes de los hechos: primero negó lo dicho al oficial médico revisor, luego expresó que sufrió un fuerte dolor de migraña y, posteriormente, indicó que utilizó la sustancia para fines medicinales. Asimismo, arguyó que el recurrente reconoció que, al momento de los hechos, los derivados del cannabis no tenían un uso medicinal. Igualmente, planteó que las órdenes ejecutivas invocadas

---

[5] *Íd.*, Anejo 6, págs. 26-30.

eran *ultra vires*, al no poder derogar una ley. Por lo anterior, solicitó la desestimación del recurso.

Tras varios trámites procesales, el 21 de abril de 2022, el señor González Gautier presentó una *Solicitud de Disposición Sumaria.*[6] En esta, resaltó que el caso ofrecía la oportunidad de analizar si, a través de los testimonios del oficial de enlace del NPPR, del químico y del oficial médico revisor, se cumplió con el estándar de prueba clara, robusta y convincente respecto a la cadena de custodia de la muestra de orina utilizada para la detección de sustancias controladas. Añadió que dicha muestra no era admisible como evidencia, ya que faltó más de un eslabón en la cadena de custodia. Ello, puesto que no compareció como testigo el colector de la muestra, la persona que recibió las muestras en el Instituto de Ciencias Forenses ni quien las almacenó en la nevera. Discutió que las personas que intervinieron en el manejo de la muestra eran responsables de su integridad y fiabilidad, y que los testimonios ofrecidos por el NPPR no acreditaron su custodia. Especificó que el oficial de enlace del recurrido no participó en la cadena de custodia y que el colector no observó las precauciones para asegurar la adecuada custodia de la evidencia.

Por otro lado, el recurrente planteó que el NPPR extralimitó las funciones del oficial médico revisor y este violó la confidencialidad de su informe al divulgar información médica y personal sin su autorización. Además, enfatizó que el médico no le advirtió sobre su derecho a realizar una prueba de corroboración de la muestra.

El 20 de mayo de 2022, el recurrido presentó una *Moción en Solicitud de Desestimación y/o Resolución Sumaria.*[7] En síntesis, expuso que las controversias de este caso versaban sobre asuntos de derecho, por lo que procedía la desestimación del recurso o la confirmación de la medida disciplinaria. Según el NPPR, la acción del

---

[6] *Íd.*, Anejo 25, págs. 77-95.
[7] *Íd.*, Anejo 24, págs. 67-76.

señor González Gautier automedicarse con una sustancia prohibida sin receta médica constituyó una de las faltas imputadas. Asimismo, alegó que el recurrido admitió el uso de la sustancia en la Vista celebrada el 6 de diciembre de 2016, lo que implicó su posesión y uso ilegal. A su vez, afirmó que el recurrente estaba consciente de que sus actos podían conllevar sanciones disciplinarias en atención a la naturaleza de su empleo como miembro del NPPR.

Tiempo después, el 17 de abril de 2023, el señor González Gautier presentó una *Réplica a Moción en Solicitud de Desestimación y/o Resolución Sumaria.*[8] En esta, reiteró que el NPPR no presentó los testigos indispensables para cumplir con la carga probatoria de prueba clara, robusta y convincente. Ello, dado que no contaba con los testigos que acreditaran, de manera fehaciente, la integridad de la evidencia mediante un enlace consecutivo de eventos en la custodia desde su ocupación hasta su presentación en el caso. Por consiguiente, sostuvo que el resultado de la muestra de orina era inadmisible en evidencia. Además, disputó que el NPPR intentó incorporar nuevos testigos e información adicional.

Más adelante, el 15 de junio de 2023, el recurrido sometió una declaración jurada del oficial examinador que celebró la vista informal en conjunto con una transcripción de dicha vista celebrada el 16 de diciembre de 2016.[9] De esta surgió que la representante legal del señor González Gautier declaró que, a tenor con el *Reglamento para la Detección de Sustancias Controladas, supra*, el 15 de abril de 2016, el Instituto de Ciencias Forenses le realizó una prueba de laboratorio a su cliente. Empero, alegó que, para la fecha de los hechos regía una política pública orientada a la despenalización del uso de la marihuana. Además, expresó lo que sigue:

> Lcda. Burgos: No es ilegal que un empleado público que tenga un resultado positivo a marihuana.

---

[8] *Íd.*, Anejo 31, págs. 103-109.
[9] *Íd.*, Anejo 35, págs. 113-123.

[...]

Lcda. Burgos: Ok; que... que... cual es la importancia de esto... cualquier empleado que tenga una necesidad como por ejemplo en el caso de nosotros que la... el padecimiento de migraña que muchas veces terminas tú en el hospital. Este es el mecanismo que se utiliza para... medicar [...] ese tipo de enfermedad específicamente [...]

Oficial examinador: [...] ¿está aludiendo al peticionario?... la utilizó... migraña...

Lcda. Burgos: **O sea la utiliz[ó] para la migraña específicamente él tiene un padecimiento de migraña crónico.**

Oficial examinador: [...] Peticionario la utilizó migraña... crónica ¿Qué más?

Lcda. Burgos: **Fue utilizada para fines medicinales.**

[...]

Lcda. Burgos: Vamos a solicitar diez días para presentar un memorando de derecho [...]

[...]

Lcda. Burgos: ¿Hasta cuándo nos concederían?

Oficial examinador: ¿Eso sería todo?... Bueno [este] hasta el veinte de diciembre.

Lcda. Burgos: ¿puede ser hasta el veintiuno?

Oficial examinador: Como no. Un *follow up* hasta el veintiuno de diciembre... [...] hasta el veintidós sabe.

Lcda. Burgos: Ok[,] perfecto.

Sucesivamente, el 26 de junio de 2023, el señor González Gautier solicitó, entre otros, eliminar la declaración jurada del oficial examinador del expediente, al entender que era una evidencia inadmisible.[10] A su vez, precisó que al tratarse de un juicio *de novo*, la CIPA no debía reconocer la determinación administrativa que le precedió, por lo que era impertinente el informe del investigador del NPPR. Por último, apuntó que el 8 de febrero de 2022, el recurrido estipuló que probaría su caso con sólo los tres (3) testigos que comparecieron a la vista, pero que ha estado incluyendo un sinfín de

---

[10] *Íd.*, Anejo 38, págs. 126-129.

testigos no estipulados. Así las cosas, el 4 de agosto de 2023 la CIPA resolvió que no procedían los remedios solicitados.[11]

Luego de varias incidencias procesales, el 5 de febrero de 2025, la CIPA emitió una *Resolución Sumaria* en la que declaró No Ha Lugar a la apelación del señor González Gautier y confirmó su expulsión.[12] En esta, formuló las determinaciones de hecho que siguen:

1. El apelante era miembro de la Policía de Puerto Rico y estaba adscrito a la División de Patrullas de Carreteras, Área de Carolina.
2. Allá para el 15 de abril de 2016[,] el apelante fue sometido por la Policía a una prueba de detección de sustancias controladas.
3. El 13 de junio de 2016[,] el apelante fue entrevistado por el Dr. Robles Mora, Médico Revisor Oficial de la Policía, con relación a la muestra numerada E 0206049 que, de acuerdo a los formularios, había sido entregada por el apelante, para auscultar alguna razón médica para el uso de dicha sustancia. No habiendo presentado justificación médica alguna, el médico revisor concluyó que se trataba de positivo metabólico de marihuana verificado.
4. Para esa fecha del 15 de abril de 2016[,] el proceso de detección de sustancias estaba regido por el Reglamento número 6403.
5. El apelante admitió haber utilizado la sustancia controlada.
6. La investigación de la situación se llevó a cabo mediante una querella administrativa.
7. El 17 de junio de 2016 se le notificó al apelante la suspensión sumaria de empleo y resolución de cargos.
8. El apelante solicitó vista administrativa, la cual fue pautada para el 27 de junio de 2016. En esa ocasión[,] el apelante compareció con su abogada, la Lcda. Luz I. Burgos Santos, y solicitó la transferencia de la vista, la cual se declaró ha lugar y se recalendarizó para el 6 de diciembre de 2016.
9. En la vista del 6 de diciembre de 2016[,] el apelante no declaró sobre los hechos imputados por instrucciones de su abogada, quien presentó planteamientos en cuanto a la aplicabilidad de la OE-2015-10 y 2015-35 al proceso disciplinario que se llevaba a cabo; que a su vez la OE-2016-045 era extensiva y obligatoria a todas las agencias del ejecutivo; que el uso de la marihuana por un empleado público no era ilegal y <u>que su uso fue para controlar una fuerte migraña con fines medicinales</u>. (Énfasis suplido).
10. El apelante solicitó un término para someter memorando de derecho con relación a las órdenes ejecutivas que entendía le eximían de responsabilidad administrativa en el proceso disciplinario para lo cual se le concedió el término de diez (10) días.
11. El plazo concedido venció sin que el apelante presentase su memorando de derecho. Por tanto[,] el oficial examinador rindió su informe el 28 de diciembre de 2016.
12. La resolución final confirmando el castigo de expulsión luego de vista le fue notificada al Sr. González Gautier el 9 de enero de 2017.

---

[11] *Íd.*, Anejo 29, pág. 130. Notificada el 7 de agosto de 2023.
[12] *Íd.*, Anejo 1, págs. 1-7. Notificada el 1 de mayo de 2025.

En base a dichas determinaciones de hechos, estableció que el recurrente admitió el uso y arrojó positivo a marihuana, por lo que violentó el *Reglamento para la Detección de Sustancias Controladas, supra,* el cual dispone la incompatibilidad del uso de sustancias controladas en todo puesto del NPPR.

En desacuerdo con la determinación administrativa apelativa, el 30 de mayo de 2025, el señor González Gautier presentó un *Recurso de Revisión Administrativa* en el que planteó que la CIPA incurrió en los siguientes errores:

1. ERRÓ LA CIPA AL DECIDIR EL CASO DE AUTOS MEDIANTE UNA SOLICITUD DE DISPOSICIÓN SUMARIA Y/O DESESTIMACIÓN.

2. ERRÓ LA CIPA AL NEGARLE AL APELANTE EL DERECHO A LA CELEBRACIÓN DE UNA VISTA EN SU FONDO, SIENDO ESTE PROCESO UN JUICIO DE NOVO.

3. ERRÓ LA CIPA AL IGNORAR LAS ESTIPULACIONES LLEVADAS A CABO POR LAS PARTES Y APROBADAS POR ESTA AGENCIA SIN EXPLICACIÓN O FUNDAMENTO LEGAL ALGUNO.

4. ERRÓ LA CIPA AL ESTABLECER COMO HECHO PROBADO QUE EL APELANTE HABÍA ACEPTADO EL USO DE SUSTANCIAS CONTROLADAS.

5. ERRÓ LA CIPA AL PERMITIR LA DIVULGACIÓN ILEGAL DEL MÉDICO REVISOR DE LAS CONVERSACIONES CONFIDENCIALES LLEVADAS A CABO EN LA ENTREVISTA CONFIDENCIAL CON EL APELANTE.

El recurrente reconoció que la disposición sumaria era un asunto discrecional del juzgador, siempre y cuando no existiera un hecho sustancial en controversia. No obstante, señaló que la CIPA no resolvió las controversias relacionadas con las determinaciones de hechos sobre los acuerdos alcanzados, la inclusión de testigos, la transcripción de la vista informal, y la postura de los comisionados en torno a las estipulaciones adoptadas durante la vista del 8 de febrero de 2022. Asimismo, puntualizó que faltaban testigos que sustentaran la cadena de custodia indispensable en este caso.

De otra parte, planteó que la CIPA prejuzgó el hecho de que aceptó el uso de sustancias controladas, aun cuando no declaró en la vista del 6 de diciembre de 2017. Esgrimió que cualquier

conversación que la representante legal tuviese con el oficial examinador no podía atribuirse a su persona. Además, argumentó que las alegaciones no constituían prueba.

También, cuestionó la legalidad de que el NPPR utilizara las conversaciones confidenciales sostenidas entre él y el oficial médico revisor. Subrayó que dicho funcionario público no podía declarar como testigo de los hechos, ya que tanto la reunión como su informe al jefe de la agencia eran confidenciales. Sin embargo, apuntó que el NPPR lo presentó como testigo e indicó que iba a declarar sobre sus hallazgos en la entrevista, su opinión médica, las manifestaciones del recurrente y las acciones que, según su percepción, fueron realizadas por este. Por tales razones, solicitó que declaremos Ha Lugar la apelación ante la CIPA, revoquemos su determinación, ordenemos la celebración de una vista, entre otros remedios.

Por su parte, el 2 de julio de 2025, el NPPR representado por la Oficina del Procurador General de Puerto Rico (OPG) presentó su argumento ante esta Curia apelativa. Según expuso, la CIPA concluyó que el cargo que ocupó el señor González Gautier no estaba cobijado por las protecciones concedidas en la *Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicable y Límites*, Ley Núm. 42-2017, 24 LPRA sec. 2621 *et seq.* (*Ley MEDICINAL*), por lo que no era procedente su restitución en el empleo.

Arguyó que el recurrente fue notificado y tuvo la oportunidad de presentar sus planteamientos, defensas y evidencia relacionada con el uso de la marihuana con fines médicos ante el NPPR y la CIPA. Empero, destacó que el señor González Gautier no controvirtió los hechos relacionados con su consumo de cannabis y que su puesto no estaba protegido por la *Ley MEDICINAL, supra.* En ese sentido, enfatizó que la representante legal del recurrente declaró que este utilizaba la marihuana para tratar su migraña crónica y que este no negó el uso de la sustancia controlada.

Al respecto, manifestó que el Artículo 148 del *Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites*, Reglamento Núm. 9038, Departamento de Estado, 2 de julio de 2018, pág. 157 (*Reglamento MEDICINAL*), dispuso que las protecciones laborales concedidas a pacientes autorizados y registrados para utilizar cannabis medicinal no cobijaba a aquellos empleados sobre los cuales el patrono demostrara que el uso de dicha sustancia interfería con el desempeño de su trabajo. Asimismo, reiteró que el *Reglamento para la Detección de Sustancias Controladas, supra,* consideraba incompatible el uso de sustancias controladas con el desempeño efectivo de su cargo en el NPPR.

En cuanto a la controversia con el oficial médico revisor, expresó que el Artículo 15 de la *Ley para Reglamentar las Pruebas para la Detección de Sustancias Controladas en el Empleo en el Sector Público*, Ley Núm. 78-1997, 3 LPRA sec. 2512, según enmendada (*Ley para la Detección de Sustancias Controladas*) establecía que toda información, formulario, informe, entrevista o declaración relacionada con el resultado de las pruebas de drogas era confidencial, salvo para los funcionarios o empleados designados por la agencia para tales fines. Expuso que el Artículo 14 del *Reglamento para la Detección de Sustancias Controladas, supra,* señaló que, en caso de un resultado positivo, el oficial médico revisor tenía la responsabilidad de notificarlo por escrito al superintendente o a la persona autorizada mediante un informe confidencial.

**II.**

**A. NPPR**

El comisionado del NPPR está facultado para establecer, mediante reglamentación, las conductas de sus miembros que constituyan faltas administrativas sujetas a medidas correctivas no punitivas o sanciones disciplinarias. Art. 2.20 de la *Ley del*

*Departamento de Seguridad Pública de Puerto Rico*, Ley Núm. 20-2017, según enmendada, 25 LPRA sec. 3550.[13] En la Sección 14.6.1 del *Reglamento para Enmendar el Artículo 14 del Reglamento de Personal de la Policía de Puerto Rico*, Reglamento Núm. 9001, Departamento de Estado, 29 de agosto de 2017, pág. 20, se clasificó como falta grave, sancionable con expulsión en la primera infracción, el consumo de drogas, tranquilizantes o estimulantes, salvo por prescripción médica, así como la posesión o distribución de sustancias controladas. Véase Sec. 14.3 del *Reglamento de Personal de la Policía de Puerto Rico*, Reglamento Núm. 4216, Departamento de Estado, 11 de mayo de 1990, pág. 94. Igualmente, se reputa falta grave la demostración de incapacidad manifiesta, ineptitud, parcialidad o negligencia en el cumplimiento de los deberes y las responsabilidades del cargo, cuando tal conducta u omisión cause o permita una violación de derechos civiles, daño corporal significativo o la muerte de una persona. *Íd.* Asimismo, la Sección 14.3 del *Reglamento para Enmendar el Artículo 14 del Reglamento de Personal de la Policía de Puerto Rico, supra*, pág. 6, prohíbe que los miembros del NPPR incurran en comportamientos que menoscaben la reputación de la agencia o del Gobierno de Puerto Rico.

**B. Detección de sustancias controladas en un empleo público**

Por otro lado, el Artículo 14 (b) (1) de la *Ley para la Detección de Sustancias Controladas, supra*, sec. 2511, dispone que no se puede despedir o destituir a un funcionario o empleado por arrojar un resultado positivo corroborado en una prueba inicial para la detección de sustancias controladas,[14] excepto cuando, por la propia

---

[13] Hacemos notar que por medio de la Ley Núm. 83-2025, firmada el 30 de julio de 2024, conocida como la *Ley de la Policía de Puerto Rico*, la Legislatura de Puerto Rico enmendó recientemente la *Ley del Departamento de Seguridad Pública de Puerto Rico, supra* a los fines de crear la Policía de Puerto Rico, otorgarle autonomía administrativa y fiscal y establecer la figura de Superintendente como administrador y director de la Policía, entre otros aspectos. Para efectos de esta determinación se hace referencia, al ordenamiento jurídico vigente al momento de los procedimientos ante nuestra consideración.

[14] En el Artículo 4 (d) de la Ley *Ley para la Detección de Sustancias Controladas, supra,* sec. 2501, se define droga o sustancia controlada como toda droga o

naturaleza del empleo, dicha condición sea incompatible con el desempeño eficiente de las funciones inherentes de su puesto. En lo pertinente, todo cargo adscrito a agencias o programas de seguridad pública, incluido el NPPR, es incompatible con el uso de sustancias controladas. *Íd.*, véase Art. 4 (c) de la *Ley para la Detección de Sustancias Controladas, supra*, sec. 2501; Art. 16 (A) del *Reglamento para la Detección de Sustancias Controladas, supra*.

Si se impone una medida correctiva, acción disciplinaria, suspensión, o cese de funciones, se deberán respetar las garantías procesales mínimas, tales como notificación oportuna y la celebración de una vista, en la que el funcionario o empleado pueda expresar su defensa, presentar evidencia a su favor y refutar la evidencia en su contra. *Íd.*; *U. Ind. Emp. AEP v. AEP*, 146 DPR 611 (1998). Ello responde al debido proceso de ley en su vertiente procesal que requiere del Estado un proceso justo y equitativo al intervenir con el interés propietario de una persona, como lo es el derecho a conservar su empleo protegido o la expectativa legítima de continuidad laboral. *Íd.* En consecuencia, todo empleado público con interés propietario en su puesto tiene derecho a ser informado de los cargos en su contra y a una vista informal previa a su despido. *Íd.*

Si el miembro del NPPR no está conforme con la determinación administrativa, puede presentar una apelación ante la CIPA dentro de un término de treinta (30) días desde la notificación de la determinación final sobre la medida disciplinaria. Art. 2.20 de la *Ley del Departamento de Seguridad Pública de Puerto Rico, supra*, sec. 3550; Art. 17 de la *Ley para la Detección de Sustancias Controladas, supra*, sec. 2514; Sec. 14.3 del *Reglamento de Personal de la Policía de Puerto Rico, supra*; Art. 15 (2) del *Reglamento para la Presentación,*

---

sustancia comprendida en las Clasificaciones I y II del Artículo 202 de la *Ley de Sustancias Controladas de Puerto Rico*, Ley Núm. 4 de 23 de junio de 1971, según enmendada, exceptuando el uso de sustancias controladas por prescripción médica u otro uso autorizado por ley.

*Investigación y Adjudicación de Querellas y Apelaciones ante la Comisión de Investigación, Procesamiento y Apelación*, Reglamento Núm. 7952, Departamento de Estado, 1 de diciembre de 2010, pág. 16 (*Reglamento de la CIPA*).

### C. Procedimientos adjudicativos de la CIPA

La CIPA ejerce jurisdicción exclusiva como foro apelativo para atender los recursos presentados por los miembros del NPPR a quienes se les haya impuesto sanciones disciplinarias por faltas graves. *Ramírez v. Policía de PR*, 158 DPR 320 (2003). La vista que se celebra ante la CIPA es *de novo*, lo que significa que el organismo administrativo puede evaluar nuevamente toda la evidencia presentada y adjudicarle el valor probatorio que estime adecuado. *Íd.* Es decir, dicha vista formal es equivalente a un juicio en sus méritos. *Íd.* En todo procedimiento adjudicativo formal ante una agencia, se deben salvaguardar las garantías procesales mínimas dispuestas en la Sección 3.1 de la *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9641 (LPAUG). Estas incluyen: (a) derecho a una notificación oportuna de los cargos, la querella o los reclamos en contra de una parte; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial, y (d) derecho a que la decisión sea basada en el expediente.

Además, la CIPA tiene autoridad para atender todos los aspectos procesales y probatorios del caso, incluyendo ordenar la comparecencia de testigos, recibir declaraciones y requerir la presentación de evidencia pertinente a los asuntos en controversia. *Íd.* El expediente de la CIPA servirá como base exclusiva para la determinación del organismo y cualquier revisión judicial posterior. Asimismo, no se considerará admitida ninguna prueba en el expediente hasta que haya sido presentada formalmente por alguna de las partes, y que quien presida la conferencia con antelación a la

vista o la vista en su fondo determine su admisión. Art. 28 del *Reglamento de la CIPA, supra.*

Ahora bien, una agencia puede adjudicar sin necesidad de celebrar una vista evidenciaria cuando no existen hechos materiales en controversia. *OCS v. Universal,* 187 DPR 164 (2012); *Mun. de San Juan v. CRIM,* 178 DPR 163 (2010). En ese contexto, la CIPA puede desestimar o disponer sumariamente una querella o apelación, ya sea *motu proprio* o a solicitud de parte, cuando determine que no se plantean hechos que ameriten el remedio solicitado, o que corresponde dictar resolución como cuestión de derecho a favor de la parte promovente ante la ausencia de controversia real de los hechos. Art. 26 del *Reglamento de la CIPA, supra*; véase *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016).

Cónsono con lo anterior, la Sección 3.7 de la LPAUG, *supra,* sec. 9647, dispone lo siguiente sobre las resoluciones sumarias:

> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separables de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede.

### D. Revisión judicial

La revisión judicial faculta a este Tribunal a examinar las decisiones, órdenes y resoluciones finales de un foro administrativo. Art. 4.006(c) de la *Ley de la Judicatura,* Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y; Sec. 4.2 de la LPAUG, *supra,* sec. 9672. Su propósito es asegurar que el foro administrativo actúe dentro del poder delegado y la política legislativa. *OEG v. Martínez Giraud,* 210

DPR 79, 88 (2022); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Forum, 2013, pág. 669.

Los tribunales sostendremos las determinaciones de hechos de la agencia si se basan en la evidencia sustancial contenida en el expediente administrativo. Sec. 4.5 de la LPAUG, *supra*, sec. 9675. Sin embargo, revisaremos las conclusiones de derecho en todos sus aspectos. *Íd.*; *Vázquez y otro v. Con. Tit. Los Corales*, 2025 TSPR 56.

Previamente, los tribunales otorgábamos deferencia a la interpretación administrativa si resultaba razonable y se basaba en su pericia técnica. *Íd.* No obstante, el Tribunal Supremo de Puerto Rico acogió la interpretación federal establecida en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024), en cuanto a que los tribunales debemos ejercer un juicio independiente al determinar si un foro administrativo actuó dentro del marco de sus facultades estatutarias. *Íd.* Así, ya no tenemos que otorgar deferencia a la interpretación administrativa del derecho, sino que debe aplicarse los mecanismos interpretativos judiciales. *Íd.* Pues, a diferencia de las agencias, los tribunales contamos con una perspectiva más amplia para considerar estas controversias, guiado por la preservación de un sistema robusto del Derecho, reforzado por la confianza pública tanto en los procesos administrativos y judiciales. *Íd., citando a South Porto Rico Sugar Co. v. Junta Azucarera*, 82 DPR 847 (1961).

Por otro lado, las cuestiones mixtas de hechos y de derecho se considerarán como controversias de derecho, por lo que serán revisables en toda su extensión. *Super. Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Rivera v. A&C Development Corp.*, 144 DPR 450 (1997).

### E. Cannabis

La Asamblea Legislativa promulgó la *Ley MEDICINAL, supra,* con el propósito de regular, entre otros, el uso del cannabis medicinal y promover el bienestar de los pacientes a quienes se les recomiende

dicho tratamiento. El cannabis se dispuso en la Clasificación II de la *Ley de Sustancias Controladas, supra*. Sin embargo, aclaró que bajo ninguna circunstancia debe interpretarse que se autoriza el uso del cannabis sin la recomendación de un doctor en medicina cualificado que conozca los riesgos y beneficios de esta sustancia. Por lo que, "las únicas personas autorizadas a utilizar el cannabis medicinal serán aquellas con un padecimiento identificado por un médico, bajo la recomendación de éste en una relación médico-paciente bona fide, cuando la condición se encuentre en las condiciones aprobadas mediante reglamento." *Íd.* Por ello, solamente las personas debidamente autorizadas con una identificación emitida conforme a esta Ley podrán acudir a los dispensarios para la compra al detal del cannabis. A saber, el Artículo 10 de la *Ley MEDICINAL, supra*, sec. 2623b, dispone lo siguiente:

> (a) Se autoriza el uso medicinal del cannabis conforme a las disposiciones de esta Ley, siempre y cuando se cumpla con los siguientes requisitos:
> **(i) Sea recomendado por un médico autorizado conforme a las disposiciones de esta Ley y los reglamentos que conforme a la misma se aprueben.**
> **(ii) La persona lleve consigo la identificación con foto emitida por la Junta, la que el paciente o acompañante autorizado deberá tener en todo momento que tenga posesión del cannabis medicinal.** (Énfasis nuestro).

### F. Confidencialidad de los resultados de las pruebas de sustancias controladas

Por último, el Artículo 15 de la *Ley para la Detección de Sustancias Controladas, supra*, sec. 2512 y el Artículo 17 del *Reglamento para la Detección de Sustancias Controladas, supra*, declaran confidencial toda información, formulario, informe, entrevista o declaración relacionado con el resultado de la prueba toxicológica o incidentes que generen sospechas sobre el uso de sustancias controladas por parte de funcionarios o empleados en funciones. Dicha información no podrá divulgarse. *Íd.* A manera de excepción, los resultados podrán ser divulgados al propio funcionario o empleado, a la persona que designe, a los funcionarios autorizados

por el superintendente del NPPR, y a los proveedores de tratamiento o programas de rehabilitación, siempre que el afectado haya otorgado su consentimiento expreso. Por otro lado, el Artículo 16 de la *Ley para la Detección de Sustancias Controladas, supra,* sec. 2513, dispone que un resultado positivo en una prueba toxicológica administrativa no podrá ser admitido como evidencia en procesos administrativos, civiles o penales contra el empleado o funcionario, salvo se impugne dicho resultado o el procedimiento mediante el cual se obtuvo. *Íd.*

**III.**

En el presente caso, el señor González Gautier planteó que la CIPA erró al resolver el caso sumariamente, sin concederle su derecho a celebrar una vista en su fondo, ignorando las estipulaciones llevadas a cabo por las partes. Además, planteó que dicho organismo erró al establecer como hecho probado que el recurrente aceptó el uso de sustancias controladas y al permitir la divulgación de la información confidencial que manejó el médico revisor.

Tras examinar sosegadamente el expediente ante nuestra consideración, concluimos que no le asiste la razón al recurrente.

Durante la vista informal del 6 de diciembre de 2016, la representante legal del señor González Gautier admitió expresamente que su cliente utilizó marihuana para tratar una migraña crónica. Esto quedó consignado en la transcripción de la vista y formó parte del expediente considerado por la CIPA. Sin embargo, no se acreditó que el recurrente estuviera debidamente registrado o autorizado bajo la *Ley MEDICINAL, supra,* para hacer uso del cannabis medicinal al momento de los hechos. Conforme al Artículo 10 de dicha ley, *supra,* sec. 2623b, únicamente podían beneficiarse de sus protecciones aquellos pacientes que contaran con (1) recomendación médica emitida por un profesional autorizado, (2) registro, e (3) identificación oficial con foto emitida por la Junta Reglamentadora del Cannabis Medicinal, la cual debía portar el paciente o su acompañante

autorizado en todo momento en que tuviese posesión del cannabis medicinal. El recurrente no acreditó ninguno de estos requisitos, por lo que no se acreditó el registro y autorización de uso de cannabis medicinal, a tenor con la *Ley MEDICINAL, supra*. En consecuencia, no demostró la alegación de uso medicinal de la sustancia controlada. Pues, el mero hecho de padecer migraña u otra condición de salud no autoriza a una persona a consumir cannabis por iniciativa propia, sin cumplir con los requisitos establecidos en la referida ley y sus reglamentos.

No obstante lo anterior, la CIPA actuó conforme a derecho al confirmar la medida disciplinaria de expulsión impuesta al señor González Gautier por el NPPR. Ello, por el resultado positivo a sustancias controladas resultar incompatible con sus funciones como agente del NPPR, de conformidad con el Artículo 4 de la *Ley para la Detección de Sustancias Controladas, supra*, sec. 2501 y el Artículo 16 del *Reglamento para la Detección de Sustancias Controladas, supra*. Estos establecieron que el uso de sustancias controladas era incompatible con todo puesto adscrito al NPPR. De igual forma, el *Reglamento de Personal del NPPR, supra*, consideraba como falta grave el consumo de sustancias controladas, sancionable con la expulsión en la primera infracción.

Además, no existió violación a la confidencialidad en las conversaciones sostenidas con el oficial médico revisor. De acuerdo con el Artículo 15 de la *Ley para la Detección de Sustancias Controladas, supra*, sec. 2512, dicha información podía ser comunicada a los funcionarios autorizados dentro del marco del procedimiento disciplinario.

En cuanto a la alegación de que existían hechos controvertidos que impedían la adjudicación sumaria, tampoco le asiste la razón al recurrente. La admisión del uso de la sustancia controlada, el resultado positivo confirmado y la falta de autorización médica para

el uso medicinal fueron hechos incontrovertidos. De hecho, fue el propio recurrente quien solicitó por primera vez una resolución sumaria, al considerar que no existían hechos materiales en controversia y que solo restaba determinar el derecho aplicable. Por tanto, la CIPA actuó dentro de su autoridad al resolver el caso sin vista evidenciaria adicional.

Tampoco puede prosperar la alegación de que se violó su derecho al debido proceso de ley. Del expediente surge que el recurrente fue debidamente notificado de los cargos en su contra, compareció mediante representación legal a la vista informal, tuvo oportunidad de exponer argumentos y presentar evidencia, y ejerció todos los remedios procesales disponibles. Por todo lo anterior, quedó claro que no se violentaron sus garantías mínimas del debido proceso de ley.

Por los fundamentos antes expuestos, confirmamos la *Resolución Sumaria* emitida por la CIPA, mediante la cual se confirmó la decisión del NPPR de expulsar al señor González Gautier por haber arrojado positivo a sustancias controladas.

**IV.**

Por las razones que anteceden, se confirma la determinación recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones